**In re AL COPELAND ENTERPRISES, INC., Debtor.**

Bankruptcy No. 91–12575–FM.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Oct. 11, 1991.

Mark Browning, Asst. Atty. Gen., Bankruptcy Section, Atty. Gen. of State of Tex., Austin, Tex.

R. Glen Ayers, Jr., Cox & Smith, Inc., San Antonio, Tex., for Committee of Unsecured Creditors.

Adrian M. Overstreet, Overstreet, Winn & Edwards, P.C., Austin, Tex., for debtor-in-possession.

John H. Tate, II, Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., San Antonio, Tex. (J. Ronald Trost, P.C., Sidley & Austin, Los Angeles, Cal., Thomas E. Pitts, Jr., Sidley & Austin, New York City, of counsel), for Canadian Imperial Bank of Commerce.

MEMORANDUM OPINION

FRANK R. MONROE, Bankruptcy Judge.

On August 9, 1991, the Court held a hearing on the State of Texas' Amended Motion for Adequate Protection of Interest in Trust Funds. In its Motion, the State requested that sales taxes collected pre-petition by the Debtor be determined trust funds and be entitled to statutory interest provided by state law until paid. The Debtor admitted its liability for the principal amount of the taxes owed but resisted any payment of interest and opposed the tax claims' characterization as a trust fund claim.

This Court has jurisdiction of this contested matter pursuant to 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(1), 28 U.S.C. § 151, and the standing Order of Reference in this District. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The Court has considered the pleadings of the parties, the evidence established at the hearing, the briefs of the parties, and the Court's own independent research. Accordingly, this Memorandum Opinion shall constitute Findings of Fact

and Conclusions of Law under Bankruptcy Rule 7052 as made applicable to contested matters under Bankruptcy Rule 9014.

## Findings of Fact

1. This proceeding was commenced by the filing of a voluntary petition by the Debtor under Chapter 11 on April 12, 1991.

2. The Debtor's estate owes the State of Texas the sum of $1,059,504.39 by reason of sales taxes the Debtor collected pre-petition from February 25, 1991 to March 24, 1991, which taxes came due and payable post-petition on April 22, 1991. The Debtor's estate owes the State of Texas $757,646.99 for sales taxes the Debtor collected pre-petition from March 25, 1991 through April 12, 1991, which taxes were due and payable post-petition on May 20, 1991.

3. As the Debtor collected the sales taxes, it deposited them into local bank accounts in the cities where collected. Those accounts were then swept on most banking days into a central clearing account. Ultimately the taxes were placed into a concentration account maintained at Chemical Bank. All funds in the concentration account in excess of projected daily cash needs were then invested in overnight repurchase agreements through an investment account at Texas Commerce Bank—Dallas, N.A. The average interest rate earned by the Debtor on invested funds between April 22, 1991 and August 1, 1991 was five percent (5%).

4. As of April 12, 1991, the Debtor owed no withheld federal income taxes, Federal Insurance Contribution Act taxes, or other known forms of federal "trust fund" taxes.

5. The debtor-in-possession's failure to timely pay these taxes is not the result of any intentional wrongdoing. The debtor-in-possession has not resisted payment of the principal amount of the tax claims themselves but has only requested that the State obtain authority from this Court for it to pay the same. The debtor-in-possession did not, however, take any affirmative steps on its own to pay the sales tax claims on a timely basis.

6. At the hearing the Court ordered the debtor-in-possession to immediately pay the State the principal amount of the tax claims at issue here, the total sum of $1,817,151.38.

## Issues

1. Are the sales taxes collected by the Debtor trust funds, and, therefore, not property of the estate?

2. Is the State of Texas entitled to interest on the "trust fund" portion of its claim?

## Conclusions of Law & Discussion

1. *Trust Funds.* Section 111.016 of the Texas Tax Code grants trust fund status to sales tax receipts in the hands of the party collecting them. Specifically, this section provides that,

> "Any person who receives or collects a tax or any money represented to be a tax from another person *holds the amount so collected in trust* for the benefit of the state and is liable to the state for the full amount collected plus any accrued penalties *and interest on the amount collected.*"

Tex.Tax Code Ann. § 111.016 (Vernon Supp.1991) (emphasis added). The trust language of this section, added effective July 21, 1987, clarified the status of collected sales tax receipts because the Texas Tax Code provision dealing in general with the collection of sales taxes by retailers at the point of purchase does not contain "trust fund" language. *See* Tex.Tax Code Ann. § 151.052 (Vernon 1982).[1] Now, with the amendment of § 111.016, there is no question that collected sales taxes are trust funds. *See In re Gulf Consolidated Ser-*

---

1. This section states

(a) A seller who makes a sale subject to the sales tax imposed by this chapter shall add the amount of the tax to the sales price, and when the amount of the tax is added:

(1) it becomes a part of the sales price;
(2) it is a debt of the purchaser to the seller until paid; and
(3) if unpaid, it is recoverable at law in the same manner as the original sales price.

*vices, Inc.,* 110 B.R. 267, 268 (Bankr. S.D.Tex.1989).

■ This Court is bound by substantive state law on this issue. As such, the Court concludes that the sales taxes collected by the Debtor as set forth in the Findings hereinabove came into the hands of the Debtor as trust funds for the State of Texas.

Since the sales taxes collected by the Debtor were trust funds, then, to the extent they remained in the Debtor's possession on the petition date, they are not property of the Debtor's estate. 11 U.S.C. § 541(d); *Begier v. I.R.S.,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). The *Begier* court analyzed the language of 26 U.S.C. § 7501, an Internal Revenue Provision which states:

> "Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld *shall be held to be a special fund in trust for the United States.*"

26 U.S.C. § 7501 (1986).

The Supreme Court concluded that this language creates a trust at the time of the withholding. *Begier,* 110 S.Ct. at 2264. Further, and of greater significance, citing a prior opinion as support, the Supreme Court concluded that § 7501 did not "mandate segregation as a prerequisite to the creation of a trust.... [P]etitioner's suggestion that we read a segregation requirement into § 7501 would mean that an employer could avoid creation of a trust simply by refusing to segregate." *Id.* ("[T]here is no general requirement that the withheld sums be segregated from the employer's general funds." (citing *Slodov v. United States,* 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978))).

*Begier* was a preference case in which the trustee attempted to recover the Debtor's pre-petition payment of trust fund taxes to the IRS from its general, non-segregated monies. In construing Congress' intent behind § 541(d) of the Bankruptcy Code, the Supreme Court concluded that "the limitation that the funds must 'have been properly held for payment' is satisfied 'if the debtor is able to make the payments'."

*Id.* 110 S.Ct. at 2267.

Further, even though the trust funds had been commingled with the debtor's own money, "the debtor's act of voluntarily paying its trust fund obligation therefore is alone sufficient to establish the required nexus between the 'amount' held in trust and the funds paid." *Id.* at 2267. The result was that the trustee was unable to recover the alleged preference since the payment in question was not a transfer of property of the debtor, but a transfer of the *res* of the trust to its beneficial owner. *Id.*

The result in *Begier* and the rationale the Supreme Court used to reach this result is consistent with pre-existing trust law which had held that "the beneficiary may trace those [trust] assets and *recover them* from anyone but a bona fide purchaser for value." *In re Mahan & Rowsey, Inc.,* 817 F.2d 682, 684 (10th Cir.1987) (beneficiary of trust allowed to recover trust assets improperly transferred by the trustee of the trust). That court also stated that "[t]his trust pursuit will even allow tracing of trust funds into a commingled mass." *Id.* (citing 76 Am.Jur.2d *Trusts* § 261 (1975)).

■ The language of § 7501 of the Internal Revenue Code is similar to that of § 111.016 of the Texas Tax Code; therefore, a compatible application of *Begier* and *Mahan & Rowsey* requires that the State of Texas prove that the trust funds were collected by the Debtor, that on the date of the filing of this Chapter 11 proceeding, April 12, 1991, the Debtor had sufficient funds on hand equal to or in excess of the amount of such trust funds, and that, at all times during the interim period between collection and filing for bankruptcy, the Debtor had sufficient funds on hand to fully pay the trust fund claims. This latter requirement is imposed because if the balance of cash on hand on any interim day was less than the amount of the trust fund claims, then the trust fund claims are limited to that "lowest intermediate balance."

*Mahan & Rowsey*, 817 F.2d at 684–85. Stated another way, once the trust fund is depleted, it cannot be replenished. 4 *Collier on Bankruptcy* para. 541.14, at 541–79 to 541–80, 541–80 n. 13 (15th ed. 1991) (at footnote 13, citing *Schuyler v. Littlefield*, 232 U.S. 707, 34 S.Ct. 466, 58 L.Ed. 806 (1914); *Cunningham v. Brown*, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924)).

The evidence produced at the hearing established that the sales taxes were collected by the Debtor. Further, the State properly identified the Debtor's various bank accounts into which the sales taxes were deposited and then traced them into their ultimate repository, the concentration account at Chemical Bank from which the nightly repurchase agreements were purchased at TCB. Further, the Debtor's daily combined cash balances during the time period in question, from the date of collection to the date of the petition, never dipped below the amount of the State's sales tax trust fund claims on those days, and the funds existed on the petition date. The lowest intermediate balance rule is satisfied in this case. The State has, therefore, sustained its burden of proof.

The Court concludes that the sales taxes owed to the State of Texas in the amounts of $1,059,504.39 [for sales taxes the Debtor collected from February 25, 1991 to March 24, 1991] and $757,646.99 [for sales taxes the Debtor collected from March 25, 1991 through April 12, 1991] were collected by the Debtor in trust for the benefit of the State of Texas. Further, the lowest intermediate balance rule is satisfied in this case, and the Debtor had sufficient cash on hand as of the petition date to fully pay the trust fund claims. As such, $1,817,151.38 of the cash in the possession of the Debtor as of the date of the filing of this case [a sum equal to the trust funds claims] is not property of the Debtor's estate but is property held by the Debtor's estate in trust for its beneficial owner, the State of Texas.

2. *Interest.* It is without dispute that § 63(a) of the former Bankruptcy Act had the effect of disallowing post-petition interest on unsecured pre-petition claims, including tax claims. 3 *Collier on Bankruptcy* para. 502.02[2] & 502.02[2][a], at 502–30 to 502–37 (15th ed. 1991). In 1949, the United States Supreme Court held that unsecured tax claims should be treated no differently than other unsecured claims under the Bankruptcy Act and post-petition interest would be disallowed. *Id.* para. 502.02[2][a], at 502–37 (citing *City of New York v. Saper*, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949)). This same policy continues under the current Bankruptcy Code provision, § 502(b)(2). *Id.* "There is no indication that tax claims, from the standpoint of unmatured interest, are to be treated differently under the Code." *Id.* at 502–37 & n. 23 (*citing Post-petition Interest on Tax Claims in Bankruptcy Proceedings*, 36 Tax Law 793 (1983)). Further, "[t]here is no reason to suppose that the disallowance provision of section 502(b)(2) would not be applicable to cases under chapter 11 of the Code." *Id.* para. 502.02[b], at 502–40.

Prior to the enactment of the Bankruptcy Code, the Supreme Court had clearly established the non-dischargeability of, and therefore, the collectibility of, interest which accrued after a bankruptcy filing on non-dischargeable tax liabilities. *See Bruning v. United States*, 376 U.S. 358, 360, 84 S.Ct. 906, 907–08, 11 L.Ed.2d 772 (1964). After enactment of the Code, courts have reached different results on that issue. However, many courts have found the *Bruning* case sets forth the more compelling logic and have applied the same in Code cases. *See In re Avant*, 110 B.R. 264, 266 (Bankr.W.D.Tex.1989); *In re Burns*, 887 F.2d 1541, 1543 (11th Cir.1989); *In re Hanna*, 872 F.2d 829, 830–31 (8th Cir.1989); *In re Peiffer*, 126 B.R. 364, 369 (Bankr.N.D.Ala.1991). Additionally, the Fifth Circuit has definitively stated that gross receipt tax liability under Texas law, falling within the priority claims category of § 507(a)(7), is non-dischargeable under 11 U.S.C. § 523(a)(1)(A). *Matter of Fields*, 926 F.2d 501, 503 (5th Cir.1991) ("The legislative history reveals that this category of taxes [§ 507(a)(7) ] 'includes excise taxes which a seller of goods is required to collect from a buyer and pay over to a taxing authority.'" S.Rep. No. 989, 95th Cong., 2d Sess. 71, *reprinted in* 1978

U.S.C.C.A.N. 5787, 5857.). These cases stand as authority that the non-dischargeable tax obligation of an *individual* debtor, together with interest accrued thereon during the case, survive as the obligation of the individual debtor post-discharge.

■ These cases, however, are not applicable to the issue facing this corporate debtor. Here, the Court must determine whether interest on the pre-petition tax claim is collectible *from the estate,* not whether the debtor will be liable for the same once it is reorganized. The latter would be a relatively easier question to answer as a Chapter 11 debtor is ordinarily discharged by the confirmation of its plan "from *any* debt that arose before the date of such confirmation." See 11 U.S.C. § 1141(d)(1)(A). Dischargeability actions under § 523 do not lay against a corporate debtor reorganizing under Chapter 11. *In re Push & Pull Enterprises, Inc.,* 84 B.R. 546, 551 (Bankr.N.D.Ind.1988); 3 *Collier on Bankruptcy* at para. 523.03.

Additionally, the cases involving individual debtors dealt with tax claims in situations in which no trust *res* existed. As such, they dealt with unsecured claims under § 501 of the Code upon which § 502(b)(2) specifically disallows post-petition interest as a claim against the estate. That is not the case at hand. Here, the State has a trust fund claim. It does not have an unsecured tax claim governed solely by the provisions of 11 U.S.C. §§ 501 and 502. As of the petition date, the Debtor held property of the State, to-wit: cash in an amount equal to the State's trust fund claim. Therefore, the State's claim does not fall within the operation of §§ 501 and 502 of the Bankruptcy Code, and, as such, it is entitled to post-petition interest. *See In re Goldblatt Bros. Inc.,* 61 B.R. 459, 463–64 (Bankr.N.D.Ill.1986) (Trust funds held by debtor were not property of the estate and the prohibition against post-petition interest was not applicable.); and *Wickes Boiler Co. v. Godfrey–Keeler Co.,* 116 F.2d 842, 844 (2nd Cir.1940) (The priorities fixed by § 64 of the Bankruptcy Act, "apply only to the estate of the bankrupt, and not to trust funds of which third parties are the beneficial owners.").

This conclusion is also consistent with the legislative history of § 541 of the Bankruptcy Code which shows that Congress intended § 541(d) to exclude third party claims for trust funds from the operative provisions of the Code dealing with claims allowances. In drafting the new Bankruptcy Code provision defining property of the estate, Congress directly attacked a prior United States Supreme Court ruling which had denied trust fund status to taxes withheld or collected prior to the time of filing. *Begier,* 110 S.Ct. at 2265–66 (referring to *United States v. Randall,* 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971)). Both the Senate and House bills contained language that " 'property of the estate' would not include property held in trust for another." *Begier,* 110 S.Ct. at 2265. A compromise reached between the bills "explicitly provided that 'in the case of property held in trust, the property of the estate includes the legal title, but not the beneficial interest in the property.' " *Begier,* 110 S.Ct. at 2266 (citing 124 Cong.Rec. at 32417 (remarks of Rep. Edwards)). This legislative intent has been recognized by courts of much higher authority than this one. *See State of Texas v. Pierce (In re Pierce),* 935 F.2d 709, 713 (5th Cir.1991); *Selby v. Ford Motor Co.,* 590 F.2d 642, 646 n. 6, 648 (6th Cir.1979). Therefore, the answer to the issue of whether the State is entitled to interest on its trust fund claim is not found in the Bankruptcy Code but in state trust law. *See In re Goldblatt Bros., Inc.,* 61 B.R. at 464; *In re MCZ, Inc.,* 82 B.R. 40, 43 (Bankr.S.D.Tex.1987).

■ The Debtor argues that because it is not guilty of any "wrongdoings," it should not be required to pay interest on the trust fund claims. However, the Court does not see the logic of this reasoning. The Debtor did not timely remit such funds to the State. The mere fact that the Debtor has preserved the trust funds (and did not use the money for other purposes) is no reason to relieve it of the obligation to pay interest. Payment of interest on delinquent trust funds is specifically authorized by

state statute. *See* Tex.Tax Code Ann. §§ 111.016 and 111.060 (Vernon Supp.1991). Further, the debtor-in-possession has itself earned interest on the trust funds while the money was in its hands. It would be antithetical to the concept of "trust funds" to allow the Debtor's estate to profit by keeping the interest which has been earned on money the estate does not own regardless of the existence, or non-existence, of "wrongdoings" on its part. *See Goldblatt Bros. Inc.*, 61 B.R. at 464 ("Even if a trustee has not committed a breach of trust, he is generally liable for any interest which he received from the trust funds."); *In re MCZ, Inc.*, 82 B.R. at 43 (The court allowed the state court to determine the issue of interest but cited the *Goldblatt* case favorably.); and *Langford v. Shamburger*, 392 F.2d 939, 944–945 (5th Cir. 1968) (The trustee's improper actions in mingling trust funds with personal funds and withholding trust funds from the trust accounts entitled the beneficiaries to interest on the withheld funds at the highest legal rate.). The Court concludes that the State of Texas is entitled to interest on the trust funds held for it by the Debtor.

There is no state law provision which requires payment of interest for the sixty (60) day period immediately following the due date. Therefore, outside of bankruptcy, no interest accrues until this sixty (60) day period has elapsed. However, separate from the charging of interest, outside of bankruptcy the State is able to collect a penalty during that initial sixty (60) day period. Section 111.061 of the Texas Tax Code provides that a penalty equal to five percent (5%) of the tax is imposed on a person who fails to pay the same when due with an additional five percent (5%) being imposed thirty (30) days thereafter. Accordingly, failure to timely pay a sales tax can result in up to ten percent (10%) in penalties before interest begins to accrue. In the context of a bankruptcy case, however, penalties on pre-petition tax obligations are not generally recoverable in bankruptcy cases because 11 U.S.C. § 726(a)(4) subordinates pre-petition penalties to unsecured claims. Nevertheless, eq-

uity demands the State be compensated for the debtor-in-possession's failure to timely pay these trust fund claims. Accordingly, the State is entitled to interest from the date the taxes became due until sixty (60) days thereafter at the rate the debtor-in-possession actually earned on the State's money during that time. *See In re Goldblatt Bros., Inc.*, 61 B.R. at 464 ("The most accurate measure of the interest to be charged is the amount actually earned on the funds [by the debtor/trustee]."). Accordingly, the State is entitled to interest at the rate of five percent (5%) per annum from April 22, 1991 to June 21, 1991 on the sum of $1,059,504.39, and from May 20, 1991 to July 19, 1991 on the sum of $757,-646.99.

Section 111.060 of the Texas Tax Code provides that 10% interest shall accrue on delinquent taxes beginning sixty (60) days from the date due. The State is entitled to interest on $1,059,504.39 at the rate of 10% per annum from June 21, 1991 until the date the debtor-in-possession paid the same. Further, the State is entitled to interest on $757,646.99 at a rate of 10% per annum from July 19, 1991 until the date paid by the debtor-in-possession.

### Conclusion

The sales tax claims of the State of Texas are trust fund claims. Of the total cash the Debtor possessed on the petition date, an amount equal to these trust fund tax claims is the property of the State of Texas. These claims are entitled to interest at the rate of five percent (5%) per annum, the rate the Debtor earned upon such amounts, from the due date of such taxes until sixty (60) days thereafter and at a rate of ten percent (10%) per annum from that latter date until paid.

Counsel for the State is directed to prepare an order implementing the decision contained in this Memorandum Opinion and which specifically sets forth the exact amounts of the interest calculated as directed in this Opinion. If there is a dispute with regard to such interest amounts, counsel for the State is directed to file a Motion

for Entry of Order upon this Memorandum Opinion.