United States Court of Appeals,

Fifth Circuit.

No. 92-8193.

In the Matter of AL COPELAND ENTERPRISES, INC., Debtors.

AL COPELAND ENTERPRISES, INC., et al., Appellant,

v.

STATE of TEXAS, Appellee.

May 20, 1993.

Appeal from the United States District Court for the Western District of Texas.

Before KING, JOHNSON, and DUHÉ, Circuit Judges.

KING, Circuit Judge:

Al Copeland Enterprises, Inc. filed a voluntary Chapter 11 petition for bankruptcy. At that time, the company had collected nearly two million dollars in sales tax revenues for the State of Texas. The company became obligated to pay over the tax revenues to the State on a date shortly after the filing of the Chapter 11 petition. When the company failed to do so, the State filed a motion with the bankruptcy court requesting payment together with post-petition interest. Following a hearing on the matter, the bankruptcy court granted the State's motion. The court ordered Copeland to pay (1) the principal amount of the sales taxes, (2) the interest that the collected taxes had actually earned during the first sixty days they were overdue, and, (3) in accordance with Texas law, post-petition interest at a rate of ten percent per annum thereafter. Copeland appealed to the district court, challenging both the bankruptcy court's award of interest and the amount of that award. The district court affirmed the bankruptcy court's order, and Copeland now appeals to this court. Finding that the State is entitled to the interest actually earned on its sales tax revenues and the interest awarded under Texas law as a result of Copeland's post-petition actions, we affirm.

## I. BACKGROUND

Al Copeland Enterprises, Inc. (Copeland) operates the Church's and Popeye's Fried Chicken chains. As part of its Texas operations, Copeland pays sales taxes to the State Comptroller.

Specifically, Copeland files sales tax report s for each of its thirteen four-week operating periods. These reports, along with the accompanying payments, are due thirty days after the close of the operating period.

On April 4, 1991, an involuntary Chapter 11 petition for bankruptcy was filed against Copeland; on April 12, Copeland filed a voluntary Chapter 11 petition. At that time, Copeland was current on all sales tax returns and payments to the State of Texas. Specifically, although Copeland had completed its March operating period, its sales tax report for that month was not yet due. The March taxes, which totalled $1,059,504.35, became due on April 22—ten days *after* Copeland filed its Chapter 11 petition. Copeland's April taxes, totalling $757,646.99, became due on May 20.

After collecting the State's sales taxes, Copeland initially deposited them in bank accounts located in the cities where they were collected. The tax revenues were then moved into a central clearing account, and ultimately placed in a concentration account. The parties agree that the average interest rate earned on these revenues from April 22, 1991 until they were paid to the State was five percent.

On May 1, 1991, the State filed a Motion for Adequate Protection of Interest Trust Funds with the bankruptcy court, asserting that the sales taxes collected by Copeland in March and April constituted funds held in trust rather than property belonging to the estate. This initial motion by the State was limited to protecting the State's ability to collect its sales taxes; the State did not request payment of interest on the sales taxes. On May 31, the State amended its motion for protection to request both the principal amount of the sales taxes due and the interest and penalties imposed under Texas law. Specifically, the State asserted that, because the trust funds were never property of Copeland's estate, the State is entitled to receive interest on those revenues from the time they were due through the date of payment. According to the State, whether or not it is entitled to interest and, if so, the amount of that interest are questions of Texas law. Copeland asserted that the State's claim for post-petition interest is barred by section 502 of the Bankruptcy Code, which excludes claims against debtors for "unmatured interest."

On August 9, the bankruptcy court held a hearing on the State's motion for protection of its

sales tax revenues and interest. The court ordered Copeland to pay the principal amount of the sales taxes and took the State's request for interest under advisement; Copeland has since paid this principal to the State of Texas. On October 11, the court issued a memorandum opinion on the interest issue, holding that the State is entitled to the interest actually earned on the sales tax funds (five percent per annum) for the first sixty days following the date the taxes were due, and then ten percent per annum until the principal amount of the taxes was paid to the State. *See generally In re Al Copeland Enterprises,* 133 B.R. 837 (Bankr.W.D.Tex.1991). The bankruptcy court, stressing that (1) the State has proven that the trust funds were collected by Copeland, (2) on the date of filing its Chapter 11 petition for bankruptcy, Copeland held funds at least equal to the amount of the trust funds, (3) the State's tax revenues were never commingled with Copeland's, and (4) Copeland always possessed combined cash balances exceeding the amount of the State's claims,[1] held that federal bankruptcy law—namely, section 502(b)(2)'s prohibition of recovery of claims against estates for unmatured interest—does not prohibit the State from bringing its claim for interest actually earned on its trust revenues. According to the bankruptcy court, because the State holds a trust fund claim rather than an unsecured tax claim governed by sections 501 and 502 of the Bankruptcy Code, "it is entitled to post-petition interest." *In re Copeland,* 133 B.R. at 841 (fully addressing how this conclusion is consistent with the legislative history behind section 541 of the Bankruptcy Code) (emphasis added), *citing In re Goldblatt Bros, Inc.,* 61 B.R. 459, 463-64 (Bankr.N.D.Ill.1986) (prohibition against post-petition interest is not applicable to trust funds held by a debtor which are not the property of the estate), *and Wickes Boiler Co. v. Godfrey-Keeler Co.,* 116 F.2d 842, 844 (2d Cir.1940) (stating that priorities under the Bankruptcy Act "apply only to the estate of the bankrupt, and not to trust funds of which third parties are the beneficial owners"), *rev'd on other grounds,* 121 F.2d 415 (2d Cir.), *cert. denied,* 314 U.S. 686, 62 S.Ct. 297, 86 L.Ed. 549 (1941).

Copeland appealed to the federal district court, which entered an order summarily affirming

---

[1] This finding refers to the court's application of the "lowest intermediate balance rule." According to this rule, "if the balance of cash on hand on any interim day was less than the amount of the trust fund claims, then the trust fund claims are limited to that "lowest intermediate balance.' " *Id.* at 839-40, *citing* 4 COLLIER ON BANKRUPTCY ¶ 541.14, at 541-79, 541-80 & n. 13 (15th ed. 1991).

the order of the bankruptcy court. Copeland now appeals to this court from the district court's decision.

## II. DISCUSSION

Section 541(d) of the Bankruptcy Code expressly provides that property in which the debtor holds only legal title, and not an equitable interest, is not property of the estate to the extent of a third party's interest in that property. *See* 11 U.S.C. § 541(d);[2] *see also Begier v. I.R.S.,* 496 U.S. 53, 59, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990) ("Because the debtor does not own an equitable interest in propert y he holds in trust for another, that interest is not "property of the estate.' "); *Universal Bonding,* 960 F.2d at 372 ("[The] bankrupt estate may retain legal title over the trust, but the beneficiaries of the trust ... may reclaim their equitable interests in the trust fund so created through bankruptcy court proceedings."). Copeland does not dispute the fact that the State's sales tax revenues constitute trust revenues under section 111.016 of the Texas Tax Code, and that, pursuant to section 111.016 of the Texas Tax Code and section 541(d) of the Bankruptcy Code, the sales tax revenues—traceable proceeds merely held in trust by the estate[3]—are recoverable by the State. In fact, Copeland raises only two issues on appeal: (1) whether the State is entitled to recover post-petition interest on the principal amount of the pre-petition sales tax revenues held by Copeland, and, (2) if so, whether the measure of interest assigned by the bankruptcy court is proper.

The parties have stipulated that Copeland earned interest on the trust funds at a rate of five

---

[2]Section 541(d) provides, in pertinent part, that:

> [p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes the property of the estate ... *only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.*

11 U.S.C. § 541(d) (emphasis added); *see In re Gulf Consolidated Services, Inc.,* 110 B.R. 267, 268 (Bankr.S.D.Tex.1989) (collected sales taxes constitute trust funds); *see also Universal Bonding Ins. Co. v. Gittens & Sprinkle Enterprises, Inc.,* 960 F.2d 366, 372 (3d Cir.1992) (holding that funds owed to a debtor under bonded construction contracts constitute trust funds, and they can be recovered from the debtor).

[3]*See supra* note 1 and accompanying text.

percent per annum. The bankruptcy court awarded interest (1) under the principles of equity[4] at a rate of five percent per annum for the initial sixty days during which the sales taxes were due, and, (2) under Texas law[5] at a rate of ten percent per annum thereafter until the sales taxes were paid. The parties dispute whether this award of post-petition interest is barred by 11 U.S.C. § 502(b)(2). According to Copeland, (1) section 502(b)(2) expressly disallows claims against an estate for post-petition interest, (2) section 541(d), *quoted supra* at note 2, does not address the issue of interest earned on trust funds and, therefore, it does not provide an avenue around section 502(b)(2), and, (3) even if trust fund claims are governed by Texas law as the State alleges, the State's claim for post-petition interest on its sales tax revenues does not constitute a trust fund claim under Texas law.[6] Therefore, according to Copeland, any claim for interest must be analyzed as a claim against the

---

[4]Texas law does not impose interest for failure to pay sales taxes during the first sixty-day period during which payments are overdue. Rather, the failure to pay sales taxes or to file a report when such taxes are due results in a five percent *penalty* imposed against the person who holds them; after thirty days, an additional five percent penalty is imposed against that person. *See* TEX.TAX CODE ANN. § 111.061 (Vernon 1992); *see also* TEX.TAX CODE ANN. § 151.703 (Vernon 1992) (imposing similar penalties and interest against any person who fails to pay the requisite sales tax or to file the requisite report). The State, however, did not seek to collect the penalties imposed by Texas law, preferring instead to request interest on the trust fund revenues at the maximum legal rate under Texas law. The bankruptcy court determined that the principles of equity demand that the State be compensated with interest for Copeland's failure to pay the sales taxes during the first sixty days they were overdue. Specifically, in awarding interest for the sixty-day period at issue, the bankruptcy court stated that:

> [i]t would be antithetical to the concept of "trust funds" to allow the Debtor's estate to profit by keeping the interest which has been earned on money the estate does not own regardless of the existence, or non-existence, of "wrongdoings' on its part.

> *In re Al Copeland Enterprises,* 133 B.R. at 842. Accordingly, the court set the interest rate for this period at five percent—the rate of interest Copeland actually earned on the State's money.

[5]Delinquent sales taxes draw interest beginning 60 days from the date they are due. *See* TEX.TAX CODE ANN. § 111.060 (Vernon 1992). Prior to 1991 (and for the purposes of this case), interest was imposed at a rate of ten percent per annum; the current rate is twelve percent.

[6]Specifically, Copeland contends that,

> [w]hile recovery of additional amounts is authorized, those additional amounts are not classified as trust funds by State law. [*See* TEX.TAX CODE § 111.016.] Thus, when the Debtor paid the trust funds to the State, the trust fund claim was satisfied in full. Recovery of any additional amounts must be authorized by the Bankruptcy Code apart from the trust fund claim.

debtor's estate, and claims against a debtor's estate are barred by section 502(b)(2). In addressing these issues, we will consider first the State's claim that it is entitled to the interest actually earned on its sales tax revenues, and then its claim that it is entitled to the full ten percent rate of interest awarded under sections 111.016 and 111.060 of the Texas Tax Code.

## A. The Interest Actually Earned

The State asserts that the interest accrued on its tax revenues does not constitute property belonging to Copeland's estate, and that "both 11 U.S.C. § 541(d) and the relevant cases under the Bankruptcy Code fully support the entitlement of a trust beneficiary to recover interest on its trust funds pursuant to applicable non-bankruptcy law." In support of this proposition, the State relies upon *In re MCZ, Inc.,* 82 B.R. 40, 42-43 (Bankr.S.D.Tex.1987), and *In re Goldblatt,* 61 B.R. at 463-64. In *MCZ,* the bankruptcy court held that "the question as to whether Debtor is entitled to interest accruing on such funds is a question of state agency or trust law." 82 B.R. at 43. Similarly, in *Goldblatt,* the court held that, "[s]ince the trust funds are not property of they estate, questions as to whether [the plaintiff] is entitled to interest on those funds, and if so at what rate, are issues to be determined by trust law." 61 B.R. at 463-64.

Texas trust law provides that, in collecting and holding the State's sales tax revenues, Copeland acted merely as a trustee for the State; it never held any equitable rights to the State's sales tax revenues. TEX.TAX CODE ANN. § 111.016 (Vernon 1992) (providing that the person who collects sales tax revenues holds them in trust for the benefit of the state);[7] *see also Begier,* 496 U.S. at 59, 110 S.Ct. at 2263 ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate.' "). Moreover, as is discussed *infra* at Part II.B, the payment of penalties and interest on delinquent trust funds is prescribed by Texas law. *See* TEX.TAX CODE ANN. §§ 111.016, 111.060 (Vernon 1992).

As recognized by the bankruptcy court, "[i]t would be antithetical to the concept of "trust

---

[7]A very limited exception to section 111.016 is provided under section 151.423 of the Texas Tax Code, which states that "[a] taxpayer may deduct and withhold one-half of one percent of the amount of taxes due from the taxpayer on a timely return...." TEX.TAX CODE ANN. § 151.423 (Vernon 1992).

funds' to allow the Debtor's estate to profit by keeping the interest which has been earned on money the estate does not own...." *Copeland,* 133 B.R. at 842, *citing Goldblatt Bros., Inc,* 61 B.R. at 464 ("Even if a trustee has not committed a breach of trust, he is generally liable for any interest which he received from the trust funds."). We agree with the bankruptcy court that, just as Copeland held no equitable interest in the State's sales tax revenues, it now holds no equitable claim to the interest actually accrued on those revenues during the time they were overdue. The State holds an equitable claim to this interest, and we conclude, therefore, that the interest actually earned on the State's sales tax revenues during the period they were overdue belongs to the State. *See* 11 U.S.C. § 541(d) (excluding property from the debtor's estate where equitable interest in that property belongs to another).

## B. The Interest Awarded Under Texas Law

The bankruptcy court, pursuant to section 111.060 of the Texas Code, awarded interest at a rate of ten percent per annum beginning 60 days from the date the taxes were due until the time they were paid.[8] Under Texas law, once a consumer pays his sales taxes, liability for the payment of that tax to the State shifts to the person who receives or collects it from the consumer. Specifically, as is provided under section 111.016 of the Texas Tax Code,

> [a]ny person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state or the full amount collected *plus any accrued penalties and interest on the amount collected.*

TEX.TAX CODE ANN. § 111.016 (Vernon 1992). "Person" is defined under the Texas Government Code to include a "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." TEX.GOV.CODE ANN. § 311.005 (Vernon 1988).

Federal policy, as embodied in sections 959(b) and 960 of Title 28, mandates that trustees manage estates in compliance with state law. Specifically, section 960 provides that:

Any officers and agents conducting any business under authority of a United States court shall

---

[8]We note that the first five percent of this award of interest constitutes interest actually earned. We have already concluded that the State is entitled to this interest. *See supra* Part II.A.

be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation.

28 U.S.C. § 960;  *see In re Hatfield Const. Co.,* 494 F.2d 1179, 1181 (5th Cir.1974) (property in the hands of a trustee is not exempt from state and local taxes absent a clear expression from Congress). And section 959(b) provides that:

a trustee ... appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b) (West Supp.1992);  *see Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 505, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986) (" [Section 959(b) ] supports our conclusion that Congress did not intend for the Bankruptcy Code to pre-empt all state laws that otherwise constrain the exercise of a trustee's powers.").  The interest imposed under section 111.060 of the Texas Code was incurred by Copeland's estate as a result of the services rendered by Copeland in administering the estate and, more specifically, Copeland's failure to pay the State its sales taxes on the respective dates they were due in compliance with Texas law.  Accordingly, we must consider whether this statutory award of interest constitutes an administrative expense pursuant to section 503 of the Bankruptcy Code.  *See Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968) (damages resulting from the negligence of one acting within the scope of his authority as receiver of an estate constitute an administrative expense of that estate);  *In re Execuair Corp.,* 125 B.R. 600, 604 (Bankr.C.D.Cal.1991) (treating attorney's fees award against estate because of post-petition actions of trustee as an administrative claim).

An administrative expense allowed under 11 U.S.C. § 503(b) is the highest priority claim to be paid in a bankruptcy case.  *See* 11 U.S.C. § 507(a)(1).  Pursuant to section 503(b)(1)(A), administrative claims are defined to include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case...."[9]  11 U.S.C. § 503(b)(1)(A).  However, "administrative expenses entitled to first

---

[9]We note that this case involves a statutory award of post-petition interest based upon the post-petition actions of a trustee, rather than a "fine, penalty, or reduction in credit" relating to a

priority status are not necessarily confined to those enumerated at 11 U.S.C. § 503(b)." *In re Flo-Lizer, Inc.,* 107 B.R. 143, 145 (Bankr.S.D.Ohio 1989), *aff'd,* 916 F.2d 363 (6th Cir.1990).

Applying section 503 to the case before us, we find that the State's claim for post-petition interest pursuant to TEX.TAX CODE ANN. §§ 111.016, 111.060 is controlled by the Supreme Court's opinion in *Reading,* 391 U.S. at 471, 88 S.Ct. at 1759, and its progeny.[10] In *Reading,* a debtor filed a petition under Chapter XI of the Bankruptcy Act,[11] and a receiver was appointed to conduct the debtor's business. Six weeks after the bankruptcy was filed, the debtor's only significant asset—an eight-story industrial structure—was destroyed by fire, which spread to the adjoining property. When the owners of the abutting property filed administrative claims against the estate, the receiver was elected trustee, and he moved to expunge these claims on the ground that they did not constitute administrative expenses and the estate was without assets to satisfy them. The Supreme Court disagreed, holding that "damages resulting from the negligence of a receiver acting within the scope of his authority as receiver give rise to "actual and necessary costs' of a Chapter XI arrangement."

---

tax. The latter are expressly addressed by 11 U.S.C. § 503(b)(1)(C).

[10]Copeland argues that this issue is controlled by *In re Goldblatt,* 61 B.R. at 459. We note that the case before us is distinguishable from *Goldblatt* on several points. First, *Goldblatt* involved interest accrued on funds constituting an administrative expense pursuant to an agreement entered into by the parties. The interest at issue in the case before us is a statutory award of interest imposed under Texas law because of the post-petition actions of an entity acting as trustee, and the question before us is whether that award of interest itself constitutes an administrative expense. Second, *Goldblatt* and the case before us are distinguished by differences in the governing state trust law. The decision in *Goldblatt* is based upon Illinois trust law, which limits interest to the rate actually earned. Under Texas trust law, a beneficiary such as the State is entitled to the maximum legal rate of interest on trust funds. *See Langford v. Shamburger,* 392 F.2d 939, 945 (5th Cir.1968) ("In Texas cases, the trustee who has used trust funds for his own benefit is uniformly charged with the highest legal rate."). Moreover, as discussed in the text above, Texas law expressly imposes interest at a rate of 10 percent per annum on any person who collects sales taxes for the State and holds those revenues for more than 60 days from the date they are due. *See* TEX.TAX CODE ANN. §§ 111.016, 111.060.

[11]The pre-Code basis for the prioritization of administrative expense claims is summarized in *In re Execuair:*

> [s]ection 503(b)(1)(A) is derived from § 64 of the Bankruptcy Act of 1898, as amended in 1962, which states that there was a priority for debts which were "... the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate, subsequent to filing the petition...."

125 B.R. at 602.

391 U.S. at 485, 88 S.Ct. at 1767.

The Court's opinion in *Reading* survived Congress's revisions to the Bankruptcy Code.  As stated in *Execuair,*

> After the *Reading* decision, the Bankruptcy Code was completely revised and Congress made no substantial changes in the definition of administrative claim.  Had they chosen to do so, Congress could have defined administrative expense so as to overrule the *Reading* case....  In fact, it appears that they broadened the concept of administrative expense claim by using the word "including" to demonstrate that the sub-parts of § 503(b)(1) are examples and not limitations of what can be determined to be an administrative claim.

125 B.R. at 602-03.  Moreover, *Reading* has been expanded by lower courts.  For example, in *Yorke v. N.L.R.B.,* 709 F.2d 1138, 1143 (7th Cir.1983), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1276, 79 L.Ed.2d 680 (1984), the Seventh Circuit relied upon *Reading* in holding that those injured during the trustee's administration of an estate are entitled to an administrative priority regardless of whether their injury was caused by a tort or other wrongdoing.  Similarly, the First Circuit has applied *Reading* to hold that damages to plaintiffs in the form of a civil compensatory fine and attorney's fees resulting from a debtor's violation of an injunction constitute an administrative claim.  *In re Charlesbank Laundry, Inc.,* 755 F.2d 200, 202 (1st Cir.1985).[12]  And several courts have applied *Reading* to hold that awards of attorney's fees and costs resulting from frivolous litigation pursued by trustees constitute administrative expenses.  *See In re Met-L-Wood Corp.,* 115 B.R. 133, 136 (N.D.Ill.1990) (citing cases).  For example, in *In re E.A. Nord Co., Inc.,* 78 B.R. 289, 292 (Bankr.W.D.Wash.1987), the court held that attorney's fees and costs resulting from a debtor's pursuit of a legally frivolous post-petition arbitration constituted an administrative expense.[13]

---

[12]Specifically, the First Circuit held:

> We see no reason why the claim of plaintiffs in this case does not fall within both the letter and the spirit of *Reading.*  The same fairness principle favors plaintiffs here, whose premises, lives or businesses were adversely affected by Charlesbank's continuing conduct in violation of the temporary injunction....  If fairness dictates that a tort claim based on negligence should be paid ahead of pre-reorganization claims, then, a fortiori, an intentional act which violates the law and damages others should be so treated.

755 F.2d at 202.

[13]As stated by the *Nord Co.* court:

Similarly, in *Execuair,* 125 B.R. at 604, the court held that attorney's fees awarded against an estate because of the trustee's post-petition efforts to fight contempt proceedings constituted an administrative claim.

With *Reading* and its progeny in hand, we now consider the case before us. Copeland, possibly because of an excess of caution or possibly because of a belief that section 502(b)(2) of the Bankruptcy Code would enable its estate to hold the State's $1,817,151.38 in sales tax revenues without incurring any interest obligation to the State, elected not to carry out promptly its statutory obligations under Texas law. This post-petition decision on the part of Copeland resulted in monetary harm to the State resulting from the State being deprived of the use of its $1,817,151.38. It also resulted in Copeland's estate incurring a statutory award of interest in favor of the State pursuant to TEX.TAX CODE ANN. §§ 111.016, 111.060 (Vernon 1992). Accordingly, we conclude that, under the circumstances present here, an award of interest to the State pursuant to section 111.060 of the Texas Tax Code constitutes an administrative expense under 11 U.S.C. § 503(b), and, as such, it is entitled to be paid as the bankruptcy court ordered. *See* 11 U.S.C. § 507(a)(1); *Reading,* 391 U.S. at 471, 88 S.Ct. at 1759.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision affirming the bankruptcy court's award of interest in favor of the State.

---

The argument has been made that adjudging the award, which was of no direct benefit to the estate, as an administrative expense will decrease the dividend to other creditors. However, whatever monetary harm results to Nord's other creditors, is outweighed by the critical need to discourage parties from wasting valuable time and causing needless expense. It is fundamental to our judicial system that courts at every level have the duty, obligation, and responsibility to discourage frivolous litigation. The implementation of such policy may demand, as is this case, that the expense of such conduct be adjudged an administrative expense. If anyone is to suffer, it is better that the burden be sustained by the creditors than by the judicial system.

78 B.R. at 292.