In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3630

IN THE MATTER OF:

CHESTER B. STEENES and DORIAN DUDLEY,

*Debtors-Appellees.*

APPEAL OF:

CITY OF CHICAGO, ILLINOIS

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 17 C 2308 *et al.* — **Elaine E. Bucklo**, *Judge.*

SUBMITTED MAY 7, 2019 — DECIDED NOVEMBER 12, 2019

Before EASTERBROOK, ROVNER, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge. In re Steenes*, 918 F.3d 554 (7th Cir. 2019) (*Steenes I*), holds that the confirmation of a payment plan under Chapter 13 of the Bankruptcy Code causes the debtor's assets, including automobiles, to revert to the debtor's personal ownership unless the judge has made a debtor-specific finding under 11 U.S.C. §1327(b). We thought that this conclusion resolved the appeals. Although counsel

briefed an additional question—whether automotive fines incurred by estates during confirmed Chapter 13 payment plans should be treated as administrative expenses—the City of Chicago said that this question need not be answered if we decided the §1327(b) issue in its favor, as we did.

Two debtors (Chester Steenes and Dorian Dudley) contended in a petition for rehearing that the answer did matter to their situations. Chicago confirmed that this is so and added that the City is unwilling to give up its claims against these debtors. We therefore granted the petition for rehearing filed by Steenes and Dudley but denied petitions for rehearing filed by the other debtors. Our order provided that the administrative-expense question would be resolved using the existing briefs and argument.

*Steenes I* sets out the basics. After bankruptcy judges confirmed their Chapter 13 payment plans, Steenes and Dudley used their cars in ways that led to fines for running red lights, illegal parking, and similar offenses. They refused to pay, observing that the confirmed plans do not require them to pay fines (as opposed to other expenses). Chicago asked the bankruptcy and district judges to treat the fines as administrative expenses of the estates in bankruptcy, as long as the vehicles remain assets of the estates. Administrative expenses are entitled to priority payment. 11 U.S.C. §507(a)(2). But the bankruptcy and district judges ruled that the fines are not administrative expenses, principally because paying them does not promote the debtors' interests. 569 B.R. 733 (Bankr. N.D. Ill. 2017), affirmed, 281 F. Supp. 3d 702 (N.D. Ill. 2017). Unless payment is beneficial to the debtor, the judges concluded, an expense is not properly classified as "administrative." And because, under Chicago's law, a vehicle's own-

er, which means the estate, is the entity that must pay, the automatic stay of 11 U.S.C. §362 means that the City cannot seize, tow, or immobilize the cars.

Our prior opinion explained that the debtors, including Steenes and Dudley, have taken the view that debtors in Chapter 13 need not pay vehicular fines. Our opinion replied: "The Bankruptcy Code cannot reasonably be read to enlist the judiciary's aid in permitting debtors to violate the law." 918 F.3d at 558. That is equally true whether the device for sheltering scofflaws is holding the asset in the estate (the subject of our prior opinion) or authorizing the estate not to pay debts incurred during the course of its administration.

*Steenes I* discussed the debtors' principal argument: that they need autos to earn the money promised to creditors by the Chapter 13 plans. We observed that this is true but does not justify allowing debtors to avoid the costs of operating vehicles. They must pay for gasoline and insurance; similarly they must pay for parking, whether they acquire space legally or illegally. Allowing debtors in bankruptcy to stiff involuntary creditors, such as cities trying to collect for on-street parking, has nothing to recommend it. To the extent the bankruptcy and district judges' resolution of the administrative-expense question is supported by the same "debtors need cars" rationale that *Steenes I* deemed inadequate, it is equally bad as a justification for concluding that the expense cannot be "administrative" (when a car remains in an estate).

The language on which the bankruptcy and district judges relied appears in 11 U.S.C. §503(b)(1)(A), which says that administrative expenses include "the actual, necessary costs and expenses of preserving the estate". Paying fines does not "preserve" the estate, because the fining jurisdiction's inabil-

ity to seize the vehicles means that the estates are protected
without payment. For the same reason payment is not "nec-
essary". So the bankruptcy and district judges reasoned. But
on that view *no* involuntary debt would be an administrative
expense, because the automatic stay always could be used to
protect the estate. Only a debt that the estate incurred volun-
tarily would satisfy the statute. *Reading Co. v. Brown*, 391 U.S.
471 (1968), shows that this perspective is incorrect.

During the course of an equity receivership, a debtor's
employee started a fire that caused damage to neighboring
owners, who filed tort claims. Under the law then in force,
the debts of a receivership were handled the same as debts
of a debtor in bankruptcy (once the formal proceeding be-
gan), so the Justices treated the tort claims as debts incurred
during the bankruptcy—just as Chicago fined Steenes and
Dudley during the course of their bankruptcy. The Supreme
Court observed that the norm is to treat as administrative
expenses all costs of operating an estate in bankruptcy. The
trustee representing other creditors argued that tort claims
should be treated differently and that only voluntarily in-
curred debts should be deemed administrative expenses.

> The trustee contends that the relevant statutory objectives are
> (1) to facilitate rehabilitation of insolvent businesses and (2) to
> preserve a maximum of assets for distribution among the gen-
> eral creditors should the arrangement fail. He therefore argues
> that first priority as "necessary" expenses should be given only
> to those expenditures without which the insolvent business
> could not be carried on. For example, the trustee would allow
> first priority to contracts entered into by the receiver because
> suppliers, employees, landlords, and the like would not enter in-
> to dealings with a debtor in possession or a receiver of an insol-
> vent business unless priority is allowed. The trustee would ex-
> clude all negligence claims, on the theory that first priority for

> them is not necessary to encourage third parties to deal with an insolvent business, that first priority would reduce the amount available for the general creditors, and that first priority would discourage general creditors from accepting arrangements.

391 U.S. at 476–77. The trustee in *Reading* advanced the same basic line as the one the bankruptcy and district judges adopted here. But the Supreme Court held that claims derived from torts committed during a bankruptcy must be treated the same as debts voluntarily incurred. What is true of involuntary debts for torts is equally true of involuntary debts amassed while operating a car.

When concluding that *Reading* does not control, the district judge gave two principal reasons.

The first is that, for a business, liability in tort is just one of many operating costs, similar to labor and materials. Requiring a debtor to pay for its torts preserves an incentive to conduct the business safely, see *In re Resource Technology Corp.*, 662 F.3d 472, 476–77 (7th Cir. 2011), while fines are not necessary. 281 F. Supp. 3d at 705–06. This overlooks the point that maintaining an automobile *is* necessary to the success of a Chapter 13 bankruptcy. A debtor who failed to pay for insurance or gasoline could not continue using the car to commute to work. The question then becomes whether voluntary creditors (such as private parking lots) must be paid, while involuntary ones (such as cities whose streets may be used for parking) are not. Our earlier decision concludes that debtors who need cars must pay their involuntary creditors—including cities as well as, say, pedestrians run down by reckless driving—along with the suppliers of gasoline and insurance.

The district judge's second reason is that a natural person is entitled to a "fresh start" in a way that a business debtor is not. 281 F. Supp. 3d at 707–08. That's true enough, but the fresh start is dated when the bankruptcy begins. Pre-bankruptcy debts may be written down or discharged, under Chapter 13, to the extent they cannot be paid from current assets and income. But this does not mean that debtors are entitled to pay less than the expenses freshly incurred. A debtor making payments under a Chapter 13 plan is not entitled to buy gasoline at 50% of the price charged to other persons or to get gas on credit (promising to pay after the Chapter 13 plan ends) while others must pay when the gas is delivered. Similarly a debtor making payments under a Chapter 13 plan is not entitled to park for free on city streets, when others must pay in advance or pay fines for parking in forbidden places or at forbidden times.

An argument that it would be a good idea to distinguish between business and personal debtors is one properly addressed to Congress. Chapter 13 does treat personal debtors differently from business debtors in some respects, but the rules for identifying administrative expenses and setting priorities for payment are in Chapter 5, which applies to personal and business debtors alike. 11 U.S.C. §103(a). The district judge and the litigants have not identified any textual basis for differentiating the treatment of involuntary debts that arise during the course of business versus personal bankruptcies.

This is hardly the first time that a unit of government has contended that fines for civil offenses committed after the commencement of the bankruptcy must be treated as administrative expenses. Many courts of appeals have held that

they must be so treated. See, e.g., *In re Munce's Superior Petro-leum Products, Inc.*, 736 F.3d 567, 571–73 (1st Cir. 2013) (fine for contempt of court); *In re Al Copeland Enterprises, Inc.*, 991 F.2d 233, 240 (5th Cir. 1993) (penalty interest for failing to remit trust-fund taxes); *In re N.P. Mining Co.*, 963 F.2d 1449, 1458 (11th Cir. 1992) (civil penalties for post-petition mining activities). We have not found any contrary decision.

Steenes and Dudley contend that 11 U.S.C. §1305 supplies the exclusive provision for payment of post-filing liabilities under Chapter 13. This statute reads:

> (a) A proof of claim may be filed by any entity that holds a claim against the debtor—
>
>> (1) for taxes that become payable to a governmental unit while the case is pending; or
>>
>> (2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan.
>
> (b) Except as provided in subsection (c) of this section, a claim filed under subsection (a) of this section shall be allowed or disallowed under section 502 of this title, but shall be determined as of the date such claim arises, and shall be allowed under section 502(a), 502(b), or 502(c) of this title, or disallowed under section 502(d) or 502(e) of this title, the same as if such claim had arisen before the date of the filing of the petition.
>
> (c) A claim filed under subsection (a)(2) of this section shall be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained.

Section 1305(a) allows a city to file a proof of claim for unpaid taxes—which means, Steenes and Dudley contend, that a city may not recover unpaid fines and penalties. Otherwise §1305(a)(1) would be surplusage, the argument runs, and it

must not be read that way. See *Hall v. United States*, 566 U.S. 506, 517 (2012).

This is a non-sequitur. Section 1305 does not mention administrative expenses, as defined in §503, or change the priority of payment laid out in §507. It does not read like an exemption from payment, so that a debtor under Chapter 13 who hired a chauffeur would not ever need to pay the employee's wages. (After all, §1305 does not mention wages any more than it mentions fines.) To the extent §1305 bears on our situation, the important subsection is §1305(a)(2), which authorizes claims for "property or services necessary for the debtor's performance under the plan." That reference to necessity kicks us back to §503(b)(1)(A), which says that necessary expenses receive administrative priority. And, as we have mentioned several times, it won't do to ask whether violating local law was itself "necessary"; the question is whether operating a vehicle is necessary to earn the money needed to perform the Chapter 13 plan. If the answer is yes—and the debtors insist that cars are essential—then the costs of operating that necessary asset are themselves necessary. That's why a debtor who must pay to park in private parking lots also must pay to park on public streets. The debtors have not cited any appellate decision holding or even suggesting that administrative expenses as defined in §503(b)(1)(A) are outside the scope of §1305(a)(2).

We hold that vehicular fines incurred during the course of a Chapter 13 bankruptcy are administrative expenses that must be paid promptly and in full.

REVERSED