**In re MEGAFOODS STORES, INC. and Handy–Andy, Inc., Debtors.**

**MEGAFOODS STORES, INC. and Handy–Andy, Inc., Appellants/Cross–Appellees,**

v.

**TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, Appellee/Cross–Appellant.**

**BAP Nos. AZ–96–1683–RMeJ, AZ–96–1727–RMeJ.**
**Bankruptcy No. 94–07411–PHX–RTB.**
**Adversary No. 94–895.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 20, 1997.

Decided April 30, 1997.

Eddward P. Ballinger, Brown & Bain, P.A., Phoenix, AZ, for Megafoods Stores, Inc. & Handy Andy, Inc.

Mark E. Browning, Assistant Attorney of Texas, Collections Division/Bankruptcy Section, Austin, TX, for Texas Comptroller of Public Accounts.

Before: RUSSELL, MEYERS, and JONES, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

Debtors, Megafoods Stores, Inc. and Handy–Andy, Inc. appeal the bankruptcy court's order awarding the Texas Comptroller of Public Accounts ("Comptroller") $319,877.90 from debtors' general bank accounts in payment of the Comptroller's statutory tax trust claim.

The Comptroller cross-appeals that portion of the bankruptcy court's order which awards postpetition interest on the Comptroller's allegedly traceable tax trust funds at the 4% rate of interest actually earned rather than the 12% statutory rate of interest under Texas law. In addition, the Comptroller asserts for the first time on appeal that the difference between the two rates should be treated as an administrative expense. We AFFIRM.

## I. STATEMENT OF FACTS

The debtors were and are in the retail grocery business in Texas. Under Texas law, the debtors were required to pay over to the Comptroller on the 20th day of each month sales taxes collected during the prior calendar month. During July and August of 1994, as part of its retail sales, debtors collected Texas state and local taxes. Instead of remitting those monies to the Comptroller, debtors deposited them into their general Texas bank accounts along with proceeds from debtors' general merchandise.

When the debtors voluntarily filed for chapter 11 [1] relief on August 17, 1994, they had not yet paid the Texas sales taxes collected for the month of July of 1994 and for the period from August 1st through August 16th of 1994. The taxes were not paid when due postpetition.

After efforts to persuade the debtors to voluntarily turn over the sales taxes were unsuccessful, the Comptroller requested and obtained an order from the bankruptcy court for adequate protection of the alleged trust fund taxes on an interim basis. The Comptroller then commenced an adversary proceeding on October 21, 1994, seeking turnover of sales tax trust funds and postpetition

interest thereon. The Comptroller asserted that the monies were held in a statutory trust for the Comptroller's benefit, despite the fact that all of the tax monies that had been collected were commingled with debtors' general funds.

The bankruptcy court took the case under advisement following a one-day trial. On November 24, 1995, the bankruptcy court issued its ruling in the form of a minute entry/order which in large part granted the relief sought by the Comptroller. The bankruptcy court determined that, using the lowest intermediate balancing test ("LIBT"), the Comptroller's evidence established that $319,877.90 of Texas sales tax trust funds could be traced into the debtors' bank accounts as of the petition date. The order also stated that the Comptroller was awarded "its pro rata share of any interest earned on these funds while held by the Debtor." Subsequently, the parties stipulated that the debtors had earned interest at 4% per annum on deposited funds.

The bankruptcy court's November 24, 1995 minute entry/order reserved for later determination the issue of whether sufficient assets were on hand on the petition date to cover both the Comptroller's trust funds and claims under the Perishable Agricultural Commodities Act ("PACA") which remained unpaid. The debtors decided not to proceed with the PACA issue. The bankruptcy court entered a final judgment on July 3, 1996 which awarded the Comptroller $319,877.90 as the principal amount of tax trust funds traced into the debtors' accounts. The judgment further awarded interest at the rate of 4% per annum on the deposited funds. The debtors have yet to pay the funds to the Comptroller.

The debtors appealed the bankruptcy court's ruling in favor of the Comptroller. The Comptroller cross-appealed that portion of the bankruptcy court's ruling which awarded interest at the rate of 4% instead of the 12% statutory rate of interest allowed under Texas law.

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code,

11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

## II. ISSUES

A. Whether the debtors' commingling of the monies collected on account of state and local taxes with its general bank account funds prevented the creation of a trust.

B. Whether the Comptroller met its burden of establishing a sufficient nexus between the commingled funds and a statutory trust by using the lowest intermediate balancing test (LIBT).

C. Whether the proper amount of interest to be paid on the state's trust fund taxes was the actual rate of interest earned.

D. Whether the difference between the 4% rate of interest actually earned and the 12% statutory rate of interest should be treated as an administrative expense.

## III. STANDARD OF REVIEW

The Bankruptcy Appellate Panel reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *In re Burdge,* 198 B.R. 773, 776 (9th Cir.BAP 1996); *In re Los Angeles Int'l Airport Hotel Associates,* 196 B.R. 134, 136 (9th Cir.BAP 1996), *aff'd,* 106 F.3d 1479 (9th Cir.1997).

## IV. DISCUSSION

The crux of this appeal is whether the state and local sales taxes received and deposited into the debtors' general bank accounts constituted property of the bankruptcy estate or whether the monies were excluded from the estate under § 541(d),[2] which excludes equitable interests of third parties, including monies held in a statutory trust, from a bankruptcy estate. If a statutory trust were created and the monies could be sufficiently traced, then the bankruptcy court's ruling awarding the monies to the Comptroller would be correct. If not, the funds would constitute property of the bankruptcy estate.

Debtors primarily contend that commingling the taxes within the general accounts prevented tracing. They further argue that assuming tracing were possible, the lowest intermediate balance test ("LIBT") was not a viable method of tracing with respect to a statutory trust.

It is well-settled that a debtor does "not own an equitable interest in property he holds in trust for another," and that funds held in trust are not "property of the estate." *Begier v. I.R.S.,* 496 U.S. 53, 59, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990); *see also* § 541(d); *Universal Bonding Ins. Co. v. Gittens and Sprinkle Enterprises, Inc.,* 960 F.2d 366, 371 (3rd Cir.1992).

To establish rights as a trust recipient, a claimant must (1) demonstrate that the trust relationship and its legal source exist, and (2) identify and trace the trust funds if they are commingled. *Goldberg v. New Jersey Lawyers' Fund for Client Protection,* 932 F.2d 273, 280 (3rd Cir.1991); *In re Columbia Gas Systems Inc.,* 997 F.2d 1039, 1063 (3rd Cir.1993) (beneficiaries of trust funds bear the burden of identifying and tracing their trust property), *cert. denied,* 510 U.S. 1110, 114 S.Ct. 1050, 1051, 127 L.Ed.2d 372 (1994).

A. *Whether The Debtors' Commingling Of The Monies Collected On Account Of State And Local Taxes With Its General Bank Account Funds Prevented The Creation Of A Trust*

Our analysis begins with *Begier v. I.R.S.,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). In *Begier,* the trustee filed an adversary proceeding against the United States, claiming that the debtor's pre-petition payment of withheld federal income taxes to the IRS constituted a voidable preference under § 547(b). The United States Supreme Court rejected the trustee's position, holding that the payment of the taxes to the IRS was not

**2.** Section 541(d) provides:

**§ 541. Property of the estate**

. . . .

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

a voidable preference because the funds transferred were not property of the debtor, but rather were held in trust for the government. *Begier*, 496 U.S. at 66–67, 110 S.Ct. at 2266–67. In finding that a trust existed, the Court relied on § 7501 of the Internal Revenue Code, which provides that persons withholding taxes hold the withheld funds in trust for the IRS. 26 U.S.C. § 7501 (1986). Specifically, § 7501 provides:

> Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States.

*Id.*

The Supreme Court concluded that this language creates a trust at the time the income taxes are withheld. *Begier*, 496 U.S. at 61–62, 110 S.Ct. at 2264–65. Citing a prior opinion as support, the Supreme Court further concluded that § 7501 did not "mandate segregation as a prerequisite to the creation of [a] trust … [P]etitioner's suggestion that we read a segregation requirement into § 7501 would mean that an employer could avoid the creation of a trust simply by refusing to segregate." *Id.* at 61, 110 S.Ct. at 2264 (" '[T]here is no general requirement that the withheld sums be segregated from the employer's general funds.' ") (citing *Slodov v. U.S.*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978)). The *Begier* Court held that the debtor's pre-petition voluntary payments of withheld taxes to the IRS constituted a sufficient nexus to take the funds out of the bankruptcy estate. *Begier*, 496 U.S. at 66–67, 110 S.Ct. at 2266–67. The Supreme Court's holding was limited to the issue of whether a trust is created at the time taxes are withheld notwithstanding a debtor's commingling of trust monies with non-trust monies. The Court did not specifically address the issue of whether the LIBT is a viable method of tracing when a trust is statutory in nature.

In *In re Al Copeland Enterprises, Inc.*, 133 B.R. 837, 839–40 (Bankr.W.D.Tex.1991),

*aff'd*, 991 F.2d 233 (5th Cir.1993), a *post-Begier* case, the bankruptcy court applied the holding in *Begier* to facts very similar to the case at hand and determined that commingling prevented neither the creation of a statutory trust nor tracing. In *Copeland*, the debtor's estate owed the State of Texas nearly $2 million in sales taxes which it had collected from its customers pre-petition and had commingled with its personal funds in a general account. The debtor had not remitted any of these funds to the state, but had sufficient funds on hand postpetition to cover the amount of tax liability. The State brought an action to recover the monies from the debtor's estate, claiming that the collected sales taxes were trust fund taxes and therefore not property of the estate.

The bankruptcy court determined that the taxes were statutory trust fund taxes under the substantive laws of Texas and, as a result, the Supreme Court's decision in *Begier* was applicable to the case. *Copeland*, 133 B.R. at 839. In holding that the sales taxes were not part of the bankruptcy estate and should therefore be paid to the State, the court concluded that the sales taxes owed to Texas were collected by the debtor in trust for the benefit of the State and, pursuant to the LIBT, the trust funds had been sufficiently traced.

The bankruptcy court explained that Section 111.016 of the Texas Tax Code grants trust fund status to sales tax receipts in the hands of the party collecting them, providing specifically that:

> Any person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected plus any accrued penalties and interest on the amount collected.

Tex. Tax Code Ann. § 111.016 (Vernon Supp. 1991). The bankruptcy court found that there is no question that collected sales taxes are trust funds under Texas law pursuant to § 111.016. *Copeland*, 133 B.R. at 838, 839.[3]

---

**3.** In this section, we discuss the holding of the bankruptcy court rather than the holding of the Fifth Circuit in *Matter of Al Copeland Enterprises,*

*Inc.*, 991 F.2d 233 (5th Cir.1993), because the issue of whether the taxes collected constituted property of the estate was not appealed by the

■ The statute in the case at hand is the same statute analyzed in *Copeland.* We reach the same conclusion as the *Copeland* court with respect to whether a statutory trust was created notwithstanding the debtors' act of commingling the funds. Pursuant to *Begier* and *Copeland,* we conclude that a statutory trust was created at the time the sales taxes were received. Since the sales taxes collected by the debtors in this case were trust funds to the extent they remained in the debtors' possession on the petition date, they did not constitute property of the debtors' estate, notwithstanding the fact that the sales taxes were commingled with the debtors' personal funds. *See* § 541(d); *Begier,* 496 U.S. at 59, 110 S.Ct. at 2263.

B. *Whether The Comptroller Met Its Burden Of Establishing A Sufficient Nexus Between The Commingled Funds And A Statutory Trust By Using The Lowest Intermediate Balancing Test*

As noted above, *Begier* held that commingling does not prevent ·tracing but did not address the issue of whether the LIBT is a viable method of tracing when the trust is statutory in nature. While that issue has never been directly addressed by the· Supreme Court, the *Begier* decision and several preceding and subsequent cases have shed some light on how courts should answer that question.

In *Begier,* after the Court concluded that a trust was created "at the moment" wages were paid, it focused on whether "the *particular dollars* that ... [the debtor] paid to the IRS from its general operating accounts were 'property of the debtor.' " *Begier,* 496 U.S. at 62, 110 S.Ct. at 2264–65. In other words, the Court made an effort to develop a method to determine whether the "assets transferred to the IRS were trust property." *Id.* Because the statute considered in *Begier* provided no resolution of the issue, the Court stated that it "might naturally begin with the common-law rules that have been created to answer such questions about other varieties of trusts." *Id.* The Court concluded, however-

er, that "[c]ommon-law tracing rules, designed for a system in which particular property is identified as the trust res, are thus unhelpful in this special context," reasoning that "[u]nlike a common-law trust, in which the settlor sets aside particular *property* as the trust res, § 7501 creates a trust in an abstract 'amount'—a dollar *figure* not tied to any particular assets—rather than in the actual dollars withheld." *Id.*

The Court acknowledged that the IRS was required to "show *some* connection between the § 7501 trust and the assets sought to be applied to a debtor's trust-fund tax obligations." *Begier,* 496 U.S. at 65–66, 110 S.Ct. at 2266–67. Unable to find any guidance as to the question of "how extensive the required nexus must be in the text of the Bankruptcy Code," the Court looked at the floor statements of a representative of Congress as persuasive evidence of congressional intent. *Begier,* 496 U.S. at 64 n. 5, 110 S.Ct. at 2266 n. 5. The Court placed great weight on Representative Edwards' discussion of the effects of the House language:

[A] serious problem exists where "trust fund taxes" withheld from others are held to be property of the estate where the withheld amounts are commingled with other assets of the debtor. The courts should permit the use of reasonable assumptions under which the Internal Revenue Service, and other tax authorities, can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case.

*Begier,* 496 U.S. at 65, 110 S.Ct. at 2266 (citing 124 Cong. Rec. at 32417).

From this statement, the Court concluded that "by requiring the IRS to 'demonstrate that amounts of taxes withheld are still in the possession of the debtor at the commencement of the case [i.e. at the filing of the petition]' ... Congress expected that the IRS would have to show *some* connection between the § 7501 trust and the assets sought to be applied to a debtor's trust-fund tax obligations." *Begier,* 496 U.S. at 65–66, 110 S.Ct. at 2266. The Court continued by asking just "how extensive the required nex-

debtor. The issue on appeal to the Fifth Circuit concerned the proper amount of interest owed;

that issue is discussed in Sections C and D infra.

us must be" and answered this question by holding that the pre-petition payment to the IRS satisfied the nexus requirement. *Id.* at 66–67, 110 S.Ct. at 2266–67.

In this appeal, Megafoods Stores and Handy–Andy interpret *Begier* to mean that the nexus requirement would have been met only if they had segregated the trust fund taxes or transferred them to the taxing authority before the petition was filed. However, several cases before and after *Begier* have concluded that the LIST may constitute "'reasonable assumptions under which the Internal Revenue Service, and other tax authorities, can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case.'" *Begier,* 496 U.S. at 65, 110 S.Ct. at 2266 (citing 124 Cong. Rec. at 32417); *see also In re R & T Roofing Structures & Commercial Framing, Inc.,* 887 F.2d 981 (9th Cir.1989); *In re Al Copeland Enterprises, Inc.,* 133 B.R. 837 (Bankr.W.D.Tex.1991), *aff'd,* 991 F.2d 233 (5th Cir.1993); *City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92 (3rd Cir.1994).

In *R & T Roofing,* which preceded *Begier,* the IRS seized $18,850.18 from the debtor's delinquent Federal Insurance Contribution Act (FICA) and employee withholding taxes. The trustee brought an action seeking to avoid the seizure as a preferential transfer under § 547(b). Relying on the same remarks made by Representative Edwards which were later relied upon by the Supreme Court in *Begier,* the Ninth Circuit treated the LIBT as a reasonable assumption and allowed the IRS to apply the LIBT in an effort to trace the statutory tax trust funds after they had been commingled with the debtor's personal funds. *Id.* at 987. The Ninth Circuit then held that because the government had not satisfied the LIBT, the funds seized by the IRS were not trust fund taxes and the seizure was therefore avoidable as a preferential transfer of property of the estate. *Id.* at 987–88.

In *Begier,* the Court made note of the Ninth Circuit's decision in *R & T Roofing* but did not expressly overrule it. Instead, the Court characterized *R & T Roofing* as a case which dealt with an issue that was merely related to the issue faced in *Begier. Begier,* 496 U.S. at 57 n. 2, 110 S.Ct. at 2262 n. 2.

The bankruptcy court in *Copeland,* a post-*Begier* case, recognized the LIBT as a reasonable assumption under which taxing authorities could attempt to trace statutory trust funds that had been commingled with personal funds of the debtor. The bankruptcy court held that in order for the State of Texas to recover sales taxes collected by the debtor pre-petition as trust funds, the State was required to prove that the debtor had sufficient funds on hand to satisfy the State's trust fund claim during the intervening period between the collection of the sales taxes and the bankruptcy filing. According to the bankruptcy court, "[I]f the balance of cash on hand on any interim day was less than the amount of the trust fund claims, then the trust fund claims are limited to the 'lowest intermediate balance.'" *Copeland,* 133 B.R. at 839.

We interpret the bankruptcy court's reasoning in *Copeland* to mean that it allowed the LIBT to be used as one method of tracing statutory trust funds which have been commingled with a debtor's personal funds in a general account. See also *City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92 (3rd Cir. 1994), in which the Third Circuit, relying on the same remarks of Representative Edwards as relied on by the *Begier* Court, recognized that "the LIBT may constitute a 'reasonable assumption under which the Internal Revenue Service, and other taxing authorities, can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case.'" *City of Farrell,* 41 F.3d at 102–03.

■ Based on the Supreme Court's reasoning in *Begier* and the reasoning of post-*Begier* case law, we conclude that the bankruptcy court's ruling that the LIBT was a viable method of tracing statutory trust fund taxes which had been held in the debtors' general accounts along with non-trust funds was appropriate.

C. *Whether The Proper Amount Of Interest To Be Paid On The State's Trust Fund Taxes Was The Actual Rate Of Interest Earned*

Preliminarily, we note that the debtors have not appealed the bankruptcy court's

award to the Comptroller of interest on the principal amount at the rate of 4% per annum, which is the rate of interest actually earned. It is therefore not an issue which we need to resolve. We will nevertheless address the issue due to the significant extent to which the Comptroller argues the issue in its cross-appeal.

The Comptroller contends that in addition to the original principal amount of the sales taxes, the debtors are liable to the State for (1) the amount of interest the collected taxes had actually earned during the first 60 days they were overdue, and (2) pursuant to Texas statutory law, postpetition interest at the rate of 12% per annum thereafter.

Initially, the Comptroller points to *Matter of Al Copeland Enterprises, Inc.*, 991 F.2d 233 (5th Cir.1993) in support of its position. In *Copeland*, as discussed above, the debtor had collected nearly $2 million in sales tax revenues for the State of Texas before filing a voluntary chapter 11 petition for bankruptcy. Subsequently, the State filed a motion with the bankruptcy court requesting payment together with postpetition interest. In granting the State's motion, the bankruptcy court ordered the debtor to pay the principal amount of sales taxes, the amount of interest the collected taxes actually earned during the first 60 days that they were overdue and, in accordance with Texas law, postpetition interest at a rate of 10% per annum thereafter. The Fifth Circuit affirmed. *Copeland*, 991 F.2d at 240.

The Fifth Circuit's opinion analyzed the issues as follows: (1) whether the State was entitled to interest at the rate actually earned on the sales taxes during the first sixty days they were overdue and, in accordance with Texas law, was also entitled to postpetition interest at the statutory rate per annum thereafter, and (2) if the State was entitled to postpetition interest at the statutory rate, whether the difference between the amount of interest actually earned and the amount of interest calculated at the statutory rate would be treated as an administrative claim.

The State asserted in *Copeland* that the interest which accrued on its tax revenues did not constitute property belonging to the debtor's estate pursuant to § 541(d). In support of this proposition, the State relied on *In re MCZ, Inc.*, 82 B.R. 40, 42–43 (Bankr. S.D.Tex.1987), and *In re Goldblatt Bros., Inc.*, 61 B.R. 459, 463–64 (Bankr.N.D.Ill. 1986). In its opinion, the Fifth Circuit explained that the bankruptcy court in *MCZ* held that "the question as to whether Debtor is entitled to interest accruing in such funds is a question of state agency or trust law." *Copeland*, 991 F.2d at 236, quoting *MCZ*, 82 B.R. at 43. The Fifth Circuit further noted that the bankruptcy court in *Goldblatt* held that " '[s]ince the trust funds are not property of the estate, questions as to whether [the plaintiff] is entitled to interest on those funds, and if so at what rate, are issues to be determined by trust law.' " *Copeland*, 991 F.2d at 236 (citing *Goldblatt*, 61 B.R. at 463–64).

Finally, the Fifth Circuit discussed the provision of Texas trust law which provides that, in collecting and holding the State's sales taxes, a debtor merely holds the funds in trust for the State and never holds any equitable rights to the State's sales taxes. *Id.* at 237 (quoting Tex. Tax Code Ann. § 111.016 (Vernon 1992)) (providing that the person who collects sales tax revenues holds them in trust for the benefit of the State).

The Fifth Circuit in *Copeland* concluded that because the debtor in that case did not hold an equitable interest in the State's sales tax revenues, it also did not hold an equitable claim to the interest actually accrued on those revenues during the time they were overdue. It reasoned that because the State held an equitable claim to the interest, the State was entitled to the interest actually earned on the State's sales tax revenues during the period they were overdue. In support of its reasoning, the Fifth Circuit cited § 541(d), which excludes property from the debtor's estate where the equitable interest in that property belongs to another. *Copeland*, 991 F.2d at 237.

■ The facts, issues, arguments and case authorities cited in *Copeland* are virtually identical in this appeal. We agree with the Fifth Circuit regarding the State's entitlement to interest on the principal amount at

the 4% rate of interest actually earned. The bankruptcy court was correct in awarding interest at the rate actually earned rather than at the statutory rate.

The reason the State is entitled to the 4% rate of interest actually earned is because under state trust law, *earnings* on property held in trust for another (i.e., the trust fund monies) are as much the property of the person for whom the trust monies are held as are the trust monies themselves. The statutory rate of interest becomes irrelevant because it does not reflect the amount earned on the property held in trust. We therefore disagree with that portion of the Fifth Circuit's holding which concludes that the State is entitled to the statutory rate of interest, because we believe it is not entitled to anything more than the earnings on the State's property (i.e., the actual rate of interest earned on the monies identified as trust fund monies).

D. *Whether The Difference Between The Interest At The 4% Rate Actually Earned And The Interest At The 12% Statutory Rate Should Be Treated As An Administrative Expense*

From our review of the record on appeal, it appears that the issue of whether the difference between the amount of interest calculated at the rate actually earned and the amount of interest calculated at the statutory rate should be treated as an administrative expense was never raised at the trial level. Because it is an issue that will undoubtedly be raised in the future, and because we have all the facts necessary to resolve the issue, we will address the issue at this time.

The Comptroller relies on *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), and the *Copeland* court's interpretation of *Reading* [4] to support its position that the 8% difference in this case between the interest actually earned and the statutory rate of interest should be treated as an administrative expense.

In *Reading,* the debtor filed a chapter 11 petition and a receiver was appointed to conduct the debtor's business. Six weeks after the bankruptcy was filed, an eight-story industrial structure belonging to the debtor was destroyed by a fire, which spread to the adjoining property. When the owners of the adjoining property filed administrative claims against the estate, the receiver objected to the claims on the ground that the claims did not constitute administrative expenses. The Supreme Court disagreed, holding that "damages resulting from the negligence of a receiver acting within the scope of his authority as receiver give rise to 'actual and necessary costs' of a chapter 11 arrangement." *Reading Co.,* 391 U.S. at 485, 88 S.Ct. at 1767.

■ *Copeland* interpreted the holding in *Reading* to mean that a tax collected prepetition and the interest which accrues thereon postpetition constitute an administrative expense. We do not agree with *Copeland*'s interpretation. Rather, we understand *Reading* to mean that an expense incurred postpetition in running a debtor's business should be treated as an administrative expense. In the instant case, the taxes were collected pre-petition and, therefore, the rule in *Reading* does not operate to define the taxes or the interest thereon as an administrative expense. The Comptroller cannot establish entitlement to an administrative claim under § 503(b)(1)(A) [5] because the interest claimed was not an "actual, necessary cost and expense of preserving the estate."

■ Typically, a tax collected pre-petition is treated as an ordinary unsecured claim. 4 COLLIER ON BANKRUPTCY ¶ 503.07[1] at 503–55 (15th ed.1996) (only taxes incurred postpetition may qualify as an administrative expense under §§ 503(b)(1)(B) or (C)). Since the tax is not an administrative expense, neither is the interest thereon. *In re Mark*

---

4. *See Copeland,* 991 F.2d at 238–40.

5. Section 503 provides in pertinent part:
 **§ 503. Allowance of administrative expenses**
 . . . .
 (b) After notice and a hearing, there shall be allowed administrative expenses, other than

claims allowed under section 502(f) of this title, including—
 (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case; . . .

*Anthony Const., Inc.*, 886 F.2d 1101, 1108 (9th Cir.1989) (explaining that the Code "treats interest no differently from the underlying tax on which it accrues").[6]

## V. CONCLUSION

The bankruptcy court properly found that a statutory trust was created in favor of the State of Texas. Further, the bankruptcy court correctly allowed the Comptroller to use the lowest intermediate balancing test to trace trust fund monies which had been commingled in the debtors' general accounts.

The interest is treated the same as the underlying tax claim. Because taxes collected pre-petition are not an administrative expense, neither is the interest thereon. The bankruptcy court's judgment which ordered the debtors to pay the Comptroller $319,877.90 and awarded the Comptroller the amount of interest actually earned was correct.

Accordingly, we AFFIRM.

---

**6.** In a situation where the taxes are collected postpetition, the taxes and the interest thereon might very well be treated as an administrative expense. Because those facts are not before us, we need not resolve that issue at this time.