In re MEGAFOODS STORES, INC., a Nevada Corporation, and Handy Andy, Inc., a Delaware Corporation, Debtors.

Texas Comptroller of Public Accounts, Appellants–Cross–Appellees,

v.

Megafoods Stores, Inc., a Nevada Corporation, et al., Appellees–Cross–Appellants.

Nos. 97–16229, 97–16291.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1998.

Decided Dec. 15, 1998.

Mark Browning, Attorney General of Texas, Bankruptcy & Collections Division, Austin, Texas, for the appellant-cross-appellee.

Jeanean Kirk, Brown and Bain, Phoenix, Arizona, and Clifton R. Jessup, Jr., Dallas, Texas, for the appellees-cross-appellants.

Before: WOOD, Jr.,* HALL, and O'SCANNLAIN, Circuit Judges.

---

* Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

HARLINGTON WOOD, JR., Circuit Judge:

The Texas Comptroller of Public Accounts ("Comptroller") appeals the bankruptcy appellate panel's decision affirming the bankruptcy court's order. The order awarded post-petition interest on the Comptroller's tax trust claim against debtor Megafoods Stores, Inc. at the four percent rate of interest actually earned. The Comptroller maintains the interest rate should be the twelve percent statutory rate allowed under Texas law. Debtor Megafoods Stores, Inc. cross-appeals that portion of the bankruptcy appellate panel's holding affirming an award of $319,877.90 from the debtor's general bank accounts in payment of the Comptroller's statutory sales tax trust funds claim.

We find for the Comptroller as to the amount of interest and therefore reverse and remand with instructions to compute the interest under the Texas statutory rate of twelve percent from sixty days after the date the taxes were due to the date the taxes are paid. The statutory rate of interest shall be treated as an administrative expense of the bankruptcy estate. In addition, we instruct the lower court to award interest actually earned for the first sixty days after the date the taxes were due to be paid. As to Debtor's cross-appeal, we affirm the lower court's findings which awarded the Comptroller the statutory tax trust claim.

## I. STATEMENT OF FACTS

Handy Andy, Inc., a wholly owned subsidiary of Megafoods Stores, Inc. (referred to collectively as "Debtors"), operated a chain of grocery stores in Texas. In the course of business, Debtors collected Texas state and local sales taxes from their customers and deposited the tax funds into Debtors' bank accounts, along with proceeds from the sale of Debtors' general merchandise. Under Texas law, on the 20th day of each month, Debtors were required to pay to the Comptroller the sales taxes collected during the

prior calendar month. *See* Texas Tax Code Ann. § 151.401(a) (West 1992).

During July and August of 1994, Debtors collected Texas state and local sales taxes as part of their retail sales. On August 17, 1994, Debtors filed voluntary Chapter 11 bankruptcy petitions.[1] Debtors failed to pay Texas sales taxes on August 20, 1994 (when sales taxes collected from July were due) and on September 20, 1994 (when sales taxes collected from August 1 to August 16 were due).

After attempts to persuade Debtors to voluntarily turn over the sales taxes failed, the Comptroller filed a motion with the bankruptcy court for adequate protection of the sales taxes on an interim basis. The Comptroller sought to compel the Debtors to establish a segregated interest-bearing bank account for the sales taxes, which, according to the Comptroller, were recognized under Texas law as being held in trust by the Debtors. After filing an initial motion for adequate protection, the Comptroller filed an adversary proceeding on October 21, 1994, seeking payment of the sales tax trust funds and post-petition interest. The Comptroller asserted that the monies were held in a statutory trust for the Comptroller, despite the fact that all of the tax monies collected had been commingled with the Debtors' general funds. To date, Debtors have not yet paid these taxes, arguing that because the tax monies collected were commingled with the Debtors' general funds, no trust ever existed. The only way to identify the trust funds, according to Debtors, would have been by voluntary payment, citing *Begier v. IRS*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). Debtors maintain that the sales tax revenues collected are part of the bankruptcy estate.

The court issued an order of protection on June 15, 1995, which designated one of Debtors' bank accounts to be considered as the one holding the alleged tax trust funds and

---

1. Megafoods' principal place of business was located in Mesa, Arizona and the voluntary bankruptcy petitions were filed in the United States Bankruptcy Court, District of Arizona. The bankruptcy court had subject matter jurisdiction pursuant to 28 U.S.C. § 157 and 1334(b). The bankruptcy court's order was final and appeal- able pursuant to 28 U.S.C. § 158(a). The bankruptcy appellate panel had jurisdiction pursuant to 28 U.S.C. § 158(b). Based upon the bankruptcy appellate panel's final and appealable order, the Ninth Circuit has jurisdiction pursuant to 28 U.S.C. § 158(d).

required that Debtors not allow the balance in that account to fall below the amount of tax trust funds claimed by the Comptroller pending resolution of the Comptroller's adversary proceeding. Although the Debtors complied, this account was then claimed by one of the Debtors' secured creditors as its cash collateral and continues to be used as such by the Debtors.

A one-day trial was held on September 26, 1995. On November 24, 1995, the bankruptcy court issued a minute entry/order which held that when the Debtors collected sales taxes, a statutory tax trust arose in favor of the Comptroller by operation of Texas Tax Code § 111.016.[2] Although no identifiable trust fund existed, the court found that, using the "lowest intermediate balance test"[3] ("LIBT") applicable to common law trusts, evidence established that $319,877.90 of Texas sales tax trust funds could be traced into the Debtors' general account. The court ordered Debtors to transfer that amount plus any accrued interest into a segregated interest-bearing account. The parties stipulated that the actual earned interest on the funds was four percent per annum.

■ The bankruptcy court's order reserved for later determination the question of whether there were sufficient assets as of the petition date to cover both the Comptroller's trust funds and additional unpaid claims

made by other creditors under the Perishable Agricultural Commodities Act ("PACA").[4] In the event the assets were insufficient, the bankruptcy court would have to determine the priority between the Comptroller's claim and the PACA claims. Debtors asserted that there was a possible problem with sufficient assets. The court stated it found this assertion puzzling in light of Debtors' previous assurances that it was not administratively insolvent and placed the burden on Debtors to show it did not have sufficient assets to pay both the Comptroller and PACA claims. Additional discovery ensued and a joint pretrial statement was filed with the court on May 17, 1996. However, shortly after the pretrial statement, Debtors abandoned the issue, after having prolonged the proceedings an additional seven months, from November 25, 1995 to July 3, 1996. The court entered a final judgment on July 3, 1996, awarding the Comptroller $319,877.90 as the principal amount of tax trust funds traced into Debtors' accounts, in addition to four percent per annum actual interest earned on the deposited funds.

Debtors appealed the bankruptcy court's finding as to the principal amount of traced funds, arguing that commingling of the monies in Debtors' accounts prevented the creation of a trust and that the only tracing test allowed was through voluntary pre-petition

2. Section 111.016, Payment to the State of Tax Collections provides:

(a) Any person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected plus any accrued penalties and interest on the amount collect.

(b) With respect to tax or other money subject to the provisions of Subsection (a), an individual who controls or supervises the collection of tax or money from another person, or an individual who controls or supervises the accounting for and paying over of the tax or money, and who wilfully fails to pay or cause to be paid the tax or money is liable as a responsible individual for an amount equal to the tax or money not paid or caused to be paid. The liability imposed by this subsection is in addition to any other penalty provided by law. The dissolution of a corporation, association, limited liability company, or partnership does not affect a responsible individual's liability under this subsection.

Tex. Tax Code Ann. § 111.016 (West 1994).

3. If the balance of cash on hand on any interim day is less than the amount of the trust fund claims, then the trust fund claims are limited to the "lowest intermediate balance." *In re R & T Roofing Structures*, 887 F.2d 981, 987 (9th Cir. 1989); *In re Al Copeland Enterprises, Inc.*, 133 B.R. 837, 839–40 (Bankr.W.D.Tex.1991), *aff'd* 991 F.2d 233 (5th Cir.1993); *see* 4 Collier on Bankruptcy ¶ 541.11[6][a], at 541–54.7 (15th ed. rev.1998).

4. Several of Debtors' creditors had filed priority claims under the Perishable Agricultural Commodities Act, 7 U.S.C. 499. PACA establishes a nonsegregated trust in which a produce dealer holds produce-related assets as a fiduciary until full payment is made to the produce seller. *See* 7 U.S.C. 499e(c). PACA trust proceeds are separate from a PACA trustee's bankruptcy estate. *See In re San Joaquin Food Service, Inc.*, 958 F.2d 938, 939 (9th Cir.1992); *In re Monterey House, Inc.*, 71 B.R. 244, 247 (Bankr.S.D.Tex. 1986).

payments. The Comptroller cross-appealed as to the interest rate of four percent, maintaining that interest should be calculated at the statutory rate of twelve percent allowed under Texas law, and, alternatively, that the statutory interest rate should be treated as an administrative expense. On April 30, 1997, the bankruptcy appellate panel ("BAP") affirmed the lower court's findings as to the tax trust funds and the four percent interest rate actually earned.

The Comptroller appeals the interest rate determination and Debtors cross-appeal with respect to the principal amount of tax trust funds.

## II. STANDARD OF REVIEW

■ Decisions of the BAP are reviewed *de novo*. *In re Kim*, 130 F.3d 863, 865 (9th Cir.1997). We independently review the bankruptcy court's decision on appeal from the BAP. *Id.; In re Unicom Computer Corp.*, 13 F.3d 321, 323 (9th Cir.1994). We review the bankruptcy court's findings of fact under the clearly erroneous standard and review *de novo* its conclusions of law. *In re Kim*, 130 F.3d at 865; *In re Unicom*, 13 F.3d at 323. We also review *de novo* the lower court's ruling on choice of law and its interpretation of state law. *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1505 (9th Cir.1993) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 641 (9th Cir.1988) and *In re McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc)).

## III. ANALYSIS

### A. Texas State Sales Tax Trust Funds.

The primary issue is whether the proper amount of interest to be paid on the tax trust funds is the rate required by Texas statute or the rate of interest actually earned. However, in order to discuss the correct rate of interest, we must first deal with Debtors' challenge to the validity of recognizing the sales tax monies as trust funds and the legitimacy of having traced those trust funds using the LIBT. We adopt that portion of the BAP's holding in *In re Megafoods*, 210 B.R. 351, 354–57 (9th Cir.BAP 1997), which finds that a statutory trust was created under the substantive laws of Texas and that the sales taxes owed to Texas were merely collected by Debtors in trust for the benefit of the State. We agree with the BAP that commingling of the sales taxes and general funds does not prevent the creation of the trust nor tracing of the trust funds. *See id.* at 356. In addition, we concur that a sufficient nexus was established between the commingled statutory sales tax trust funds and the general funds through the use of the LIBT. *See id.* at 357.

■ Debtors argue that a statutory tax trust fund was never created but instead the tax monies comprised part of the bankruptcy estate. We disagree. In *Begier v. IRS*, the Supreme Court found that a trustee in bankruptcy may not recover payments of certain withholding and excise taxes previously made to the IRS. 496 U.S. at 55, 110 S.Ct. at 2261. The Court stated that those payments were not preferential payments which could be avoided if made ninety days prior to the bankruptcy filing under 11 U.S.C. § 547(b) of the Bankruptcy Code. *Id.* at 58–60, 110 S.Ct. at 2262–63. It held that the tax monies were never property of the debtor but that a trust was created at the moment the taxes were collected or withheld. *Id.* at 60–62, 110 S.Ct. at 2264. In examining 26 U.S.C. § 7501, the Internal Revenue Code's trust-fund tax provision, the Court found that § 7501 did not mandate segregation and that an employer cannot avoid the creation of a trust simply by refusing to segregate. *Id.* at 61, 110 S.Ct. at 2264. "The mere fact that [the debtor] neither placed the taxes it collected in a segregated fund nor paid them to the IRS does not somehow mean that [the debtor] never collected the taxes in the first place." *Id.* at 60, 110 S.Ct. at 2264.

■ Under Texas Tax Code § 111.016, "[a]ny person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state." A sales tax trust in which the debtor holds only legal title and not an equitable interest, is not property of the bankruptcy estate. 11 U.S.C. § 541(d); *see also Begier*, 496 U.S. at 59, 110 S.Ct. at 2263 ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"). In addi-

tion, under Texas law, state sales taxes that are statutorily designated as being held in trust for the state are not the "property" of the debtor. *See* Tex. Tax Code Ann. § 111.016.

■ Debtors argue that the Court in *Begier* "mandated" that "the methods allowed to trace funds into a common law trust cannot be applied to trace statutory trust funds." The language in *Begier* contradicts Debtors' assertions:

> Unlike a common-law trust, in which the settlor sets aside particular *property* as the trust res, § 7501 creates a trust in an abstract "amount"-a dollar figure not tied to any particular assets-rather than in the actual dollars withheld. Common-law tracing rules, designed for a system in which particular property is identified as the trust res, are thus unhelpful in this special context.

*Begier,* 496 U.S. at 62–63, 110 S.Ct. at 2265 (footnote omitted) (emphasis added). The Court further explained the fact that "Congress expected that the IRS would have to show some connection between the § 7501 trust and the assets sought to be applied to a debtor's trust-fund tax obligations." *Id.* at 65–66, 110 S.Ct. at 2266 (citations omitted). This required nexus involves the tracing of the trust funds.

> In the absence of any suggestion in the Bankruptcy Code about what tracing rules to apply, we are relegated to the legislative history. The courts are directed to apply "reasonable assumptions" to govern the tracing of funds, and . . . one such assumption [is] that any voluntary prepetition payment of trust-fund taxes out of the debtor's assets is not a transfer of the

debtor's property . . . . *Other rules might be reasonable . . . .*

*Id.* at 67, 110 S.Ct. at 2267 (emphasis added).

The BAP's opinion in *In re Megafoods* states, "The facts, issues, arguments and case authorities cited in [*In re Al Copeland Enterprises, Inc.,* 133 B.R. 837 (Bkrtcy. W.D.Tex.1991), *aff'd* 991 F.2d 233 (5th Cir. 1993)[5]] are virtually identical in this appeal." 210 B.R. at 358. In *In re Copeland,* payment was withheld of sales taxes which had been collected by the debtor prior to debtor's filing of bankruptcy. 133 B.R. at 838. The State identified the debtor's bank accounts into which the sales taxes were deposited and then traced them to an ultimate concentration bank account.[6] *Id.* at 840. The State showed that from the date of collection of the taxes to the date of the bankruptcy petition, the debtor's daily combined cash balances never fell below the amount of the State's sales tax trust fund claims. *Id.* The court held that the lowest intermediate balance rule was satisfied and that the State, therefore, had sustained its burden of proof. *Id.* The issues of the trust fund claim and the tracing of the funds by application of the LIBT were not appealed. *See Matter of Copeland,* 991 F.2d at 234. The only issue on appeal to the Fifth Circuit concerned the amount of interest owed. *See generally Matter of Copeland,* 991 F.2d 233 (5th Cir.1993).

Debtors argue that the debtor in *In re Copeland* "ha[d] not resist[ed] payment of the principal amount of the tax claims themselves but ha[d] only requested that the State obtain authority from this Court for it to pay the same." *See* 133 B.R. at 838. Debtors maintain that this "lack of resistance" is the equivalent of a voluntary pay-

**5.** Because these two cases are germane to this opinion and often cited, for brevity's sake we will refer to the bankruptcy court's opinion as *In re Copeland* and the Fifth Circuit's opinion as *Matter of Copeland.*

**6.** In its review of the facts, the Fifth Circuit noted that "the State's tax revenues were never commingled with Copeland's. . . ." *Matter of Copeland,* 991 F.2d at 235. Because the bankruptcy court's treatment of this issue was much more detailed, and due to the fact that the tracing issue was not on appeal to the Fifth Circuit, we rely on the facts as presented in *In re Copeland,* 133 B.R.

837, which indicate that Copeland did commingle funds:

> As the Debtor collected the sales taxes, it deposited them into local bank accounts in the cities where collected. Those accounts were then swept on most banking days into a central clearing account. Ultimately the taxes were placed into a concentration account maintained at Chemical Bank. All funds in the concentration account in excess of projected daily cash needs were then invested in overnight repurchase agreements through an investment account at Texas Commerce Bank–Dallas, N.A.

*In re Copeland,* 133 B.R. at 838.

ment, which they contend is the *only* way to satisfy the Supreme Court's requirement to identify funds as tax trust funds. As previously discussed, the Supreme Court noted that voluntary payment was but one method of identifying tax trust funds. *See Begier,* 496 U.S. at 67, 110 S.Ct. at 2267. Texas has simplified this problem by statutorily creating a tax trust fund at the time the taxes are collected. *See* Tex. Tax Code Ann. § 111.016. The debtors in both *Copeland* and the instant case did not take any affirmative steps on their own to pay the sales tax claims on a timely basis. Therefore, both cases are identical in that the debtors withheld payment of a sales tax trust fund.

Following the Supreme Court's reasoning, we find that the tracing of commingled trust funds using the LIBT is allowed and uphold the lower court's findings as to the recovery of the trust fund claim.

### B. Interest Earned on Delinquent Texas Sales Tax Trust Funds.

■ On appeal, the Comptroller argues that because the statutory trust does not become property of the bankruptcy estate, state law therefore controls the amount of interest paid to trust fund beneficiaries on non-estate property.

Federal law requires that trustees manage estates in compliance with state law. *See* 28 U.S.C. §§ 959, 960. Under 28 U.S.C. § 959, the trustee or debtor-in-possession in bankruptcy is charged to manage any property under his care "according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof," and is liable "with respect to any of [his] acts or transactions in carrying on business connected with such property." Section 960 specifically mandates compliance with state tax laws: "Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."

As directed by federal law, the ensuing obligations and liabilities of Debtors are dictated by the laws of Texas. *See Matter of Copeland,* 991 F.2d at 236 (citing to *In re*

*Goldblatt Bros., Inc.,* 61 B.R. 459, 463–64 (Bankr.N.D.Ill.1986) ("Since the trust funds are not property of the estate, questions as to whether [the plaintiff] is entitled to interest on those funds, and if so at what rate, are issues to be determined by trust law.")). When Debtors failed to comply with payment of the collected sales tax monies, they became liable for interest on delinquent taxes as prescribed by § 111.060 of the Texas Tax Code.

Debtors' repeated arguments that the tax funds are part of the bankruptcy estate and are therefore controlled by federal bankruptcy law are totally misplaced. As previously determined, the sales tax trust funds were never part of the bankruptcy estate. Debtors' assertion that a bankruptcy creditor is not entitled to collect interest accruing on its claims after the petition date is moot due to the fact that the Comptroller is not a bankruptcy creditor and bankruptcy law does not apply to his claim. The court in *In re Copeland* held:

> [T]he State has a trust fund claim. It does not have an unsecured tax claim governed solely by the provisions of 11 U.S.C. §§ 501 and 502.... Therefore, the State's claim does not fall within the operation of §§ 501 and 502 of the Bankruptcy Code, and, as such, it is entitled to post-petition interest.

133 B.R. at 841 (citations omitted). The Fifth Circuit agreed with the bankruptcy court's finding that the State did not have an unsecured tax claim but a trust fund claim, subject to interest under Texas law. *See Matter of Copeland,* 991 F.2d at 237–38.

As noted, the facts and issues of *Copeland* are virtually identical to this case. Copeland, the debtor, declared bankruptcy on April 4, 1991, and withheld payment of Texas sales tax revenues previously collected in March and the first part of April. *Matter of Copeland,* 991 F.2d at 234. The sales taxes were deposited in various Copeland bank accounts and eventually concentrated in one account, earning an average interest rate of five percent. *Id.* The Texas Comptroller then filed a motion against Copeland for adequate protection of interest in trust fund taxes with the bankruptcy court (later amended to in-

clude protection of both the principal amount of sales taxes due and the interest and penalties imposed under Texas law). *Id.* Even though the BAP recognized the applicability of *Copeland*, it did not award the statutory interest rate as required under *Copeland* but affirmed the bankruptcy court's award of the actual interest earned. The BAP stated that "We agree with the Fifth Circuit [in *Copeland* ] regarding the State's entitlement to interest on the principal amount at the 4% rate of interest actually earned." *In re Megafoods*, 210 B.R. at 358–59. However, it then declined to follow the Fifth Circuit's reasoning in applying the statutory rate of interest:

> We therefore disagree with that portion of the Fifth Circuit's holding which concludes that the State is entitled to the statutory rate of interest, because we believe it is not entitled to anything more than the earnings on the State's property (i.e., the actual rate of interest earned on the monies identified as trust fund monies).

*Id.* at 359.

We disagree with the BAP's contradiction of the *Copeland* holding. This contradiction conflicts with §§ 959(b) and 960, which indicate that state law controls. In determining the interest incurred by the debtor in *Copeland*, the Fifth Circuit stated that,

> [J]ust as Copeland held no equitable interest in the State's sales tax revenues, it now holds no equitable claim to the interest actually accrued on those revenues during the time they were overdue. The State holds an equitable claim to this interest, and we conclude, therefore, that the interest actually earned on the State's sales tax revenues during the period they were overdue belongs to the State.

*Matter of Copeland*, 991 F.2d at 237. This was the first step in the Fifth Circuit's analysis. The court continued, finding that because Copeland's bankruptcy estate withheld sales tax revenues and "elected not to carry out its statutory obligation under Texas law in a prompt manner ... resulted in Copeland's estate incurring a statutory award of interest in favor of the State pursuant to Tex. Tax Code Ann. §§ 111.016, 111.060."

*Id.* at 240. Contrary to the holdings of the bankruptcy court and the BAP, we must follow the clear statutory language of §§ 111.016 and 111.060 of the Texas Tax Code. Section 111.016 of the Texas Tax Code grants trust fund status to sales tax receipts in the hands of the party collecting them, which, in turn, makes a party liable to further penalties:

> Any person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected *plus any accrued penalties and interest on the amount collected.*

Tex. Tax Code Ann. § 111.016 (emphasis added). Section 111.060 [7] specifically provides that "[t]he yearly interest rate on all delinquent taxes imposed by this title is 12 percent." *See also Matter of Copeland*, 991 F.2d at 237 ("[T]he payment of penalties and interest on delinquent [sales tax] trust funds is prescribed by Texas law."); *In re Copeland*, 133 B.R. at 841–42 ("Payment of interest on delinquent [sales tax] trust funds is specifically authorized by state statute.").

For these reasons, we diverge from the holding in *In re Megafoods* as to the award of interest. Having found that a statutory trust was created at the time the sales taxes were collected by Debtors, we decline to follow the BAP's determination that interest on the trust funds would *not* be controlled by Texas state law. We therefore reverse that portion of the lower courts' judgments as to the amount of interest to be awarded and hold that Debtors are subject to both §§ 111.016 and 111.060 of the Texas Tax Code. We find that Debtors incurred the statutory rate of interest of twelve percent by withholding payment of the sales tax trust funds. In addition, because the trust funds are not part of the bankruptcy estate and Debtors have no equitable claim to the actual interest which accrued on the trust funds during the initial sixty-day period prior to commencement of the statutory interest on delinquent taxes, we award the Comptroller

---

7. Limited exceptions to § 111.060(b) are found in Chapter 152, Taxes on Sale, Rental, and Use of Motor Vehicles, Chapter 211, Inheritance Tax-

es, and § 153.017, Motor Fuel Taxes, Cooperative Agreements With Other States, of the Texas Tax Code. *See* Texas Tax Code Ann. § 111.060(c).

the actual interest earned on the funds during that time.

## C. Statutory Interest as an Administrative Expense.

▮ The final issue is whether the statutory award of interest constitutes an administrative expense pursuant to § 503 of the Bankruptcy Code. Debtors argue that this issue may not be considered because it was never raised by the Comptroller prior to this appeal and was only addressed for the first time by the BAP *sua sponte.* Although the Comptroller did not plead the issue as a separate claim, he has argued from the commencement of this case that the statutory interest rate of twelve percent must be imposed on the delinquent taxes and cited to *Copeland* analysis. We find that the issue of the difference between the interest actually earned and the statutory rate of interest is not a separate theory of recovery and need not be pleaded as a separate claim. We also agree, in the interests of judicial economy, with the Comptroller's reasoning that there was no need to file a request for an allowance of an administrative expense claim until this appeal resolves the issue. There is no bar date to filing requests for the allowance of administrative expenses under § 503 and there is nothing in the record to indicate a bar date for administrative expense claims. has been set by the bankruptcy court.

▮ In classifying the order of payment for creditors' claims, the Bankruptcy Code affords the highest level of priority to claims denominated "administrative expenses." 11 U.S.C. § 507(a)(1). Section 503(b) of the Code, which defines administrative expenses and enumerates six specific types of claims that qualify for first priority, provides in part:

> After notice and hearing, there shall be allowed, administrative expenses ..., including-
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....

11 U.S.C. § 503(b).

In analyzing § 503 and interpreting what may constitute an administrative expense,

the Supreme Court in *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), held that "damages resulting from the negligence of a receiver acting within the scope of his authority as receiver give rise to 'actual and necessary costs' of a Chapter XI arrangement." *Id.* at 485, 88 S.Ct. at 1767. Following this broader interpretation of § 503(b), the Ninth Circuit found that "the use of a form of the word 'include' is significant, and generally thought to imply that terms listed immediately afterwards are an inexhaustive list of examples, rather than a bounded set of applicable items." *In re Mark Anthony Constr., Inc.,* 886 F.2d 1101, 1106 (9th Cir.1989) (citations omitted). The opinion in *Reading* not only survived the later enactment of the Bankruptcy Code of 1978, but has been expanded by lower courts. *See Matter of Copeland,* 991 F.2d at 239 (citing to *Yorke v. NLRB,* 709 F.2d 1138, 1143 (7th Cir.1983) (holding that those injured during the trustee's administration of an estate are entitled to an administrative priority regardless of whether their injury was caused by a tort or other wrongdoing) and *In re Charlesbank Laundry, Inc.,* 755 F.2d 200, 202 (1st Cir.1985) (finding that damages to plaintiffs in the form of a civil compensatory fine and attorney's fees resulting from a debtor's violation of an injunction constitute an administrative claim)); *see also In re Abercrombie,* 139 F.3d 755, 758 (9th Cir.1998).

The Court in *Reading* also explained that the purpose of the administrative expense priority was to "include the larger objective ... of operating the debtor's business with a view to rehabilitating it." *Reading,* 391 U.S. at 475, 88 S.Ct. at 1762. In order "[t]o limit the administrative expense priority to those situations where the purpose of rehabilitation will be served," we held that the burden of proving an administrative expense claim is on the claimant, and that:

> The claimant must show that the debt asserted to be an administrative expense (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and

(2) directly and substantially benefitted the estate.

*In re DAK Indus., Inc.*, 66 F.3d 1091, 1094 (9th Cir.1995); *see also In re Abercrombie*, 139 F.3d at 757. Although the bankruptcy court in *In re Copeland* determined that intent is not relevant when tax monies are withheld, 133 B.R. at 841–42, under a *DAK* analysis, we note that, while nominally complying with the court order to segregate the trust funds and maintain a balance equivalent to the amount owed to the Comptroller, that designated account was claimed by Debtors' largest secured creditor as part of its cash collateral package. Debtors then adopted and asserted the creditor's position as their own. We may be uncertain as to the extent of Debtors' profits from the use of the Comptroller's trust funds, but it is undeniable that Debtors benefitted by keeping trust funds in their own bank account and utilizing those funds for other purposes.

In *In re Abercrombie*, we observed that "[t]he Reading Court determined that administrative expense priority was appropriate because the damage to the plaintiffs was caused by the postpetition operation of the estate's business." 139 F.3d at 758. We also noted that various circuits had applied the *Reading* exception in differing contexts, including the Fifth Circuit's application in *Matter of Copeland*. *Id*. Following *Reading* and its progeny, the Fifth Circuit held that:

> Copeland ... elected not to carry out its statutory obligations under Texas law in a prompt manner. This post-petition decision on the part of Copeland resulted in monetary harm to the State resulting from the State being deprived of the use of its [sales tax revenues]. It also resulted in Copeland's estate incurring a statutory award of interest in favor of the State pursuant to Tex. Tax.Code Ann. § 111.016, 111.060 (Vernon 1992). Accordingly, we conclude that, under the circumstances present here, an award of interest to the State pursuant to section 111.060 of the

Texas Tax Code constitutes an administrative expense[8] under 11 U.S.C. § 503(b), and, as such, it is entitled to be paid....

*Matter of Copeland*, 991 F.2d at 240 (citing to 11 U.S.C. § 507(a)(1) and *Reading*, 391 U.S. at 471, 88 S.Ct. at 1759)).

We find that Debtors are liable due to violation of their duties as debtor-in-possession under 28 U.S.C. §§ 959(b) and 960. Further, the facts of the case fall within the *Reading* exception and fulfill the two part test adopted by this circuit in *In re DAK* for determining an administrative expense priority. The interest imposed under § 111.060 of the Texas Tax Code resulted from Debtors' administration of the bankruptcy estate; that is, the failure of the estate's administrator to pay the sales taxes within the sixty-day grace period from the date the taxes were originally due under Texas law, resulted in the postpetition imposition of the statutory rate of interest. The trustee's refusal to pay also directly and substantially benefitted the estate by utilizing the funds as part of the bankruptcy estate. Therefore, the interest, as determined by statute at twelve percent, is an administrative expense.

## IV. CONCLUSION

For the foregoing reasons, we find for the Comptroller and vacate that portion of the bankruptcy court's order that awards only actual interest earned. On remand, under the authority of 28 U.S.C. § 2106,[9] we direct the bankruptcy court to enter an order awarding (1) the actual interest earned on the tax trust funds for the first sixty days after the date the taxes were to be paid and (2) the twelve percent Texas statutory rate of interest computed from sixty days after the due date up to the date the tax trust funds are paid, which shall be treated as an administrative expense.

---

8. The Fifth Circuit noted that "the first five percent of this award of interest constitutes interest actually earned." *Matter of Copeland*, 991 F.2d at 237 n. 8.

9. 28 U.S.C. § 2106 (1994) provides:
   The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

We dismiss Debtors' cross-appeal and affirm that portion of the bankruptcy court's order finding that a statutory trust was created in favor of the Comptroller and that a sufficient nexus was established between the commingled funds and a statutory trust by use of the LIBT.

AFFIRMED in part, VACATED in part, REVERSED and REMANDED in part.